No. 35,040

JOHN P. RUPPENTHAL, Conservator of the Estate of Lucile Graves Phillips, Absentee, *Plaintiff*, v. WILLIAM MAAG, County Treasurer; F. L. KIRKMAN, County Attorney, and the BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RUSSELL, *Defendants*.

(113 P. 2d 101)

Opinion filed May 10, 1941.

*J. C. Ruppenthal*, of Russell, *W. E. Hutchison, C. E. Vance* and *A. M. Fleming*, all of Garden City, for the plaintiff.

*Floyd L. Kirkman*, of Russell, for the defendants.

*J. S. Parker*, attorney general, *A. B. Mitchell* and *Guy E. Ward*, assistant attorneys general, as *amici curiae*.

The opinion of the court was delivered by

SMITH, J.: This is an original proceeding in mandamus. It was submitted at the December session. An alternative writ was issued.

The defendants filed an answer and plaintiff has filed a motion for a peremptory writ.

The following facts appear from the pleadings:

William Z. Graves, a resident of Russell county, Kansas, died intestate on February 6, 1925. His estate was administered and it was determined that Lucile Graves, a daughter, was entitled to $3,-384.98 as her distributive share; the administrator could not locate her, and after a year, or on December 12, 1930, paid the above sum to the county treasurer of Russell county, pursuant to R. S. 1923, 22-932. The county treasurer immediately paid this money out to the various school districts of the county. On August 9, 1939, certain relatives of Lucile Graves brought an action in the district court of Russell county pursuant to the provisions of chapter 234 of the Laws of 1939, this being G. S. 1939 Supp., 60-4001 to 60-4026. Attention is called especially to section 60-4010. On November 27, 1939, the court made findings of fact in accordance with the allegations of the petition and appointed John P. Ruppenthal conservator of the estate of Lucile Graves Phillips. There was no finding that the missing heir or her descendants were dead. No appeal was taken from that judgment and it has become final. The conservator made a demand on the county treasurer for the payment to him as conservator of the sum of $3,384.98, but this payment was refused. On May 11, 1940, the conservator filed a petition in the probate court of Russell county pursuant to G. S. 1939 Supp., 59-1508, asking the probate court to order the county treasurer of Russell county and the board of county commissioners of Russell county to pay to him the sum of $3,384.98. After due notice and hearing the probate court made an order in accordance with the prayer. No appeal was taken from the above judgment and it has become final. The above officials have refused to pay the judgment or to include it in the budget for the county.

The plaintiff requested the defendant officials to include the judgment in the budget of the county for the current year and to levy taxes to pay it. The defendants refused to do this or to appropriate any money for the payment of it.

The petition alleged the above facts and also alleged that defendants had sufficient funds to pay the judgment.

The prayer was for the equitable relief to which this court should hold plaintiff entitled.

To this petition the defendants filed an answer in which they

denied that they had refused to pay the judgment or that they had refused to appropriate money for the payment of the judgment. They also denied that they claimed or had claimed that the judgment was void.

The answer further alleged Russell county should not be held responsible for the payment of $3,384.98 for the reason that it had been paid to the county treasurer in accordance with law, the county treasurer had immediately illegally distributed it pro rata to the various school districts of the county and the treasurers of the various school districts were liable.

The answer further alleged that under the cash-basis law the defendants were forbidden to pay any indebtedness which had not been budgeted, and defendants had not included this item in the budget for the reason that they had been unable to ascertain whether or not they were required to pay it, and if they were required to pay it what fund to pay it from, and whether it should be paid from the general fund or the state and county school fund.

The prayer of the answer was that the plaintiff's motion for a peremptory writ be denied and in the event that the motion be sustained this court should determine whether the judgment should be paid from the county school fund and whether it must be budgeted.
. In this action no brief was filed for the defendants. The plaintiff briefed only two questions: Is Russell county released from paying a judgment in favor of the plaintiff in the sum of $3,384.98 plus interest at six percent from July 16, 1940, because the county treasurer of said county paid out the money which is the basis of said judgment to various school districts in Russell county? And may such judgment be paid out of the general fund of the county without including it in the budget and without levying a special tax therefor when there is sufficient money in the general fund of the county to pay the same?

This court did not care to have the question of whether a peremptory writ should issue rest solely upon the answer to the above questions. We were aware that no appeal was taken from the judgment in the case where the conservator was appointed nor from the judgment in probate court in which the county treasurer was ordered to pay the money to plaintiff.

We were also aware that to raise the question of the validity of those judgments in this action is to make a collateral attack upon them. This was an action for a writ of mandamus and the question

of whether such a writ should issue rests in the sound discretion of this court. Accordingly we ordered the parties to file briefs on the following questions:

(a) Does chapter 234 of the Laws of 1939, being G. S. 1939 Supp. 60-4001 to 60-4026, inclusive, apply to a case such as this, where some ten years before the distributive share of an heir was paid to a county treasurer for safekeeping, pursuant to R. S. 1923, 22-932?

(b) Since the district court was unable to find the missing heir or her descendents were not living, was its judgment valid even if no appeal was taken?

(c) What authority did the conservator appointed by the district court have to appear on behalf of collateral heirs in the probate court?

(d) What is the binding effect of the order of the probate court?

(e) If plaintiff's right to the relief sought is doubtful, should mandamus issue?

On account of the public interest in the questions we requested the attorney general, as well as counsel for the parties, to file a brief on the above questions. We have been favored with a brief by all parties.

The best means of ascertaining just what was the legislative intent is to fix what the situation was at the time of the enactment of a particular act.

We shall first examine the legislative history of R. S. 1923, 22-932. In the revision the origin of that section is given as G. S. 1868, ch. 37, sec. 176 (Laws 1917, ch. 187, sec. 1). The above is not quite as comprehensive as it might be. It should be noted that R. S. 1923, 22-932, provides that where a distributive share shall remain unclaimed for a year the executor or administrator shall pay it to the county treasurer for the benefit of the common schools. The section then provides for the payment of this share to a rightful heir if one appears and claims it within twenty-one years of the payment.

The first time the legislature of this state dealt with this subject was in 1855. Article 6, chapter 1, sections 15, 16 and 17, of that session were as follows:

"In all cases when the legatee or distributee shall not appear within one year after final settlement by the executor or administrator, and claim his share, the probate court shall order the same to be paid into the territorial treasury.

"When any share shall be paid into the treasury, the executor or administrator shall take from the treasurer duplicate receipts, one of which he shall

file in the office of the auditor, who shall charge the treasurer with the amount, and the other with the clerk of the probate court, ordering the share to be paid into the treasury, and the court shall credit the executor or administrator therewith.

"When any legatee or distributee shall appear and claim any share paid into the treasury, the probate court before whom the final settlement was made, being first satisfied of his right, shall grant him a certificate, under its seal; and on presentation of the certificate to the auditor, he shall draw his warrant on the treasury for the amount."

After the general repealing provision of the Territorial Laws of 1859, ch. 89, we find sections 210, 211 and 212 of chapter 2 (Ter. Laws 1859, ch. 91, Gen. Laws 1862) as follows:

"In all cases when the legatee or distributee shall not appear within one year after final settlement by the executor or administrator, and claim his share, the probate court shall order the same to be paid into the county treasury.

"When any share shall be paid into the treasury, the executor or administrator shall take from the treasurer duplicate receipts, one of which he shall retain, and file the other with the clerk of the probate court, ordering the share to be paid into the treasury, and the court shall credit the executor or administrator therewith.

"When any legatee or distributee shall appear and claim any share paid into the treasury, the probate court before whom the final settlement was made, being first satisfied of his right, shall grant him a certificate, under its seal; and on presentation of the certificate to the treasurer, he shall pay him the amount."

It should be noted that the only change made was that in the officer designated to whom this money should be paid. It should be further noted that the above sections both provided that the share should be paid a legatee or distributee should one appear later.

The subject was again dealt with in the session of 1868. Section 176 of chapter 37 of the General Statutes of 1868 provided as follows:

"If any sum of money directed, by an order of the court, to be distributed to heirs, next of kin or legatees, shall remain, for the space of one year, unclaimed, the executor or administrator shall pay over the same to the treasurer of the county for the benefit of the common schools of the county."

It should be noted that the above statute did not provide any means by which the share of an absent distributee could be paid to an heir or legatee of that distributee or the distributee himself should such a person later appear.

The provisions for such payment were repealed by section 2, chapter 119, General Statutes 1868. (See *Burgess v. Railroad Company*, 18 Kan. 53.)

From 1868 to 1917 there was no provision by which an heir of a distributee, to whom a distributive share could not be paid and where the money had been paid to the county treasurer, could appear later and claim the money.

The legislature of 1917 passed chapter 187, and section 1 of that chapter amended section 4663 of the General Statutes of 1915. Section 4663 was the same as section 176 of chapter 37 of the General Statutes of 1868. As amended, that section provided as follows:

"That section 4663 of the General Statutes of Kansas for 1915 be amended so as to read as follows: Section 4663. If any sum of money directed by an order of the court to be distributed to heirs, next of kin, or legatees, shall remain for the space of one year unclaimed, the executor or administrator shall pay over the same to the treasurer of the county for the benefit of the common schools of the county: *Provided,* If at any time within twenty-one years after the date of payment of said money to the county treasurer any person or the legal representative of any person shall appear and claim said money as the rightful heir to said estate, and shall prove heirship satisfactorily to the probate court, the judge of said court shall so certify, and the county treasurer shall pay over to such claimant or his legal representative the sum so received from such estate."

The above section was carried into the Revised Statutes of 1923 as R. S. 1923, 22-932. It was the law on the subject when the payment was made to the county treasurer in this case. It should be noted that the legislature in 1917 put back into effect the provision about an heir of a missing distributee claiming the share after it had been paid to a county treasurer.

This legislative history has been reviewed at length here because it is deemed persuasive on the question we are considering that the matter of what should be done with a distributive share of an estate that could not be delivered has from the beginning of statehood been treated as a subject by itself apart from legislation with reference to estates of people who die without known heirs. Furthermore, the action of the legislature in amending section 176 of chapter 37 of the General Statutes of 1868 is a definite legislative edict that it was the intention of the legislature that the probate court should be the tribunal which should determine whether a person claiming the share of a missing distributee was an heir of the distributee or the distributee himself and as such was entitled to the money. It is worthy of note in this connection that the order of the probate court on final settlement to pay the share of the missing distributee has all the binding effect on all parties and all the finality of any judgment

of a court of record. (See *Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50, also *Gaston v. Collins,* 146 Kan. 449, 72 P. 2d 84.)

We conclude, therefore, that when the money was paid to the county treasurer in this case it was paid in fulfillment of a final, binding adjudication of a court of record to the officer to whom the statute designated it should be paid. The fact that the county treasurer had paid this money to the common schools of the county has no bearing on the question we are considering. As far as the applicability of this statute is concerned the money was being held by the officer to whom the statute directed it should be paid.

In 1935 the legislature again dealt with this subject by itself. Chapter 167 of the Laws of 1935 provided as follows:

"If any sum of money directed by an order of the court to be distributed to heirs, next of kin, or legatees, shall remain for the space of one year unclaimed, the executor or administrator shall pay over the same to the treasurer of the county for the benefit of the common schools of the county: *Provided,* If any person to whom the court ordered a sum of money to be distributed refuses to accept the same when it is offered or tendered to him by the administrator or executor, and no appeal has been taken from the order of distribution, the court, upon application made before the sum of money is paid to the county treasurer, or within ten years thereafter, and upon a showing that the sum was offered or tendered to the distributee and that he refused to accept it, shall order and direct that the sum of money be paid or distributed to other heirs, next of kin, or legatees, in the share or portion they would have been entitled to receive it had the refusing distributee not been entitled to a share or portion of the state [estate]; and if at the time such order is made the sum of money has been paid to the county treasurer, the court shall certify to its order for a redistribution of the sum of money, and on such certificate being presented to the county treasurer he shall pay the same to the persons entitled to receive it, as designated in the order so certified: *Provided further,* If at any time within ten years after the date of payment of said money to the county treasurer (if no order for redistribution has been made, as above provided), the person to whom the order of distribution was made, or his legal representative, or the heir or legatee of such person, may appear and claim said money, and upon a showing to the court of his right thereto the court shall order the money to be paid to him, or them, and shall so certify his order, and on such certificate being presented to the county treasurer he shall pay over to such claimant the sum so received." (Sec. 1.)

It will be noted that this chapter added a provision dealing with the share of a distributee who refused to accept the payment of money and provided that in the case of a missing distributee an heir or legatee of the distributee might appear and claim the money. There was no change in which we are interested here.

The final change came in 1939 when the probate code, chapter 180

of the Laws of 1939, was enacted. This law was enacted after a long and careful study of the general subject of decedents' estates. Section 119 of that chapter reads as follows:

"If any part of the money on hand has not been paid over because the person entitled thereto cannot be found or refuses to accept the same, or for any other good and sufficient reason, the court may order the executor or administrator to deposit the same with the county treasurer for the benefit of the common schools of the county: *Provided,* If the person to whom said sum is ordered to be paid refuses to accept the same when it is tendered him by the executor or administrator, the court may, either before or after the sum has been deposited, order the same to be paid and distributed to those who would be entitled thereto had the refusing legatee or distributee not been entitled to it. Upon application to the probate court within ten years after such deposit, and upon notice to the county attorney and the county treasurer, the court may order the county treasurer to pay the same to the person entitled thereto. No interest shall be allowed or paid thereon, and if the deposit is not claimed within such time no recovery thereof can be had."

It will be noted that this section provides that on the proper showing ten years after payment the probate court may order the money that had been paid to the county treasurer because the distributee cannot be found paid to the person who was entitled to it. That section is now cited as G. S. 1939 Supp., 59-1508.

The same session that enacted the above section as part of the probate code also enacted chapter 234 of the Laws of 1939, which is now cited as G. S. 1939 Supp., 60-4001 to 60-4026.

We realize that where two statutes are enacted by the same session of the legislature and there is a question about whether or not the statutes cover the same matter or operate in the same general field it is the duty of the courts to reconcile these statutes, if possible. However, we do not deem that such is the case here. G. S. 1939 Supp., 60-4001 to 60-4026, inclusive, cover a distinct field which was not dealt with by any previous legislature, while section 59-1508 covers a field to which the very first legislature in this state gave attention and which has been the subject of legislation as a distinct subject from time to time. The end sought which was to enable the person entitled to an unclaimed distributee's share to appear and prove that he was entitled to that share is provided for in section 59-1508 and has been ever since 1917. There was no remedy for that particular situation which would have caused the legislature to enact 60-4001 to 60-4026. The purpose of that statute was undoubtedly to provide a procedure in cases where money, or other personal property, or real estate, were being wasted or lost through

lack of someone to take care of it. Such is not the case here. This money is in good hands and is as safely kept awaiting the appearance of the person entitled to it as though it were in the hands of a conservator. The two statutes deal with separate things altogether. We have therefore concluded that 60-4001 to 60-4026, inclusive, does not apply to cases such as the one we have here where a distributee's share of an estate was paid to the county treasurer because the person who was entitled to it could not be found.

We now reach the point where it becomes necessary to consider the fact that the judgment in this case appointing the conservator and also the order of the probate court directing this money to be paid to the conservator were unappealed from and have become final. We are unable to say that these judgments are void. This, however, is a proceeding in mandamus. The question of whether or not such a writ should issue is addressed to the discretion of this court. While it is too late for an appeal to be taken from those two judgments, we have concluded that our decision, had an appeal been taken, would have been that G. S. 1939 Supp. 60-4001 to 60-4026, did not apply to a case such as this where a distributee's share had been paid to a county treasurer pursuant to R. S. 1923, 22-932, ten years before.

We shall not inquire into the reasons why the defendants in this case did not appeal from either one of these judgments. Evidently they did not entertain any doubt about the matter at the time. Were this a matter between two private litigants we might let the matter go at that and issue a writ to enforce the judgment. There is a public interest here, however. The matter not only affects the Russell county treasurer but might affect every county treasurer in the state.

In *State, ex rel., v. Comm'rs of Phillips County*, 26 Kan. 419, in considering whether a writ should issue to compel the calling of a county seat election, this court said:

"The writ of mandamus is not wholly a writ of right, but lies to a considerable extent within the sound judicial discretion of the court where the application is made (*The State v. Marston*, 6 Kan. 524, 537; *The State v. Stevens*, 23 Kan. 456); and no court should allow a writ of mandamus to compel a technical compliance with the letter of the law, where such compliance will violate the spirit of the law." (p. 425.)

In *Railway Co. v. City of Liberal*, 108 Kan. 836, 196 Pac. 1067, this court said:

"If the writ is discretionary, it ought not to be issued to compel the performance of an act technically legal but which accomplishes actual injustice." (p. 839.)

*Kolster v. Gas Co.*, 106 Kan. 84, 186 Pac. 738, was an action to compel the gas company to furnish gas to plaintiffs at a city residence. This court said:

"An action in mandamus is a very different thing from an action on a debt or for damages or the like, where judgment as prayed for goes as a matter of course to the prevailing party, and where the court is absolutely bound to give such judgment. Mandamus is a discretionary writ, and before granting it the court may and should look to the larger, public interest which may be concerned—an interest which the private litigants are apt to overlook when striving for their private ends." (p. 86.)

There are many authorities to the same effect.

In this action if a writ of mandamus should issue, as prayed for, the only result would be to compel the county treasurer of Russell county to perform an act which the legislature did not contemplate he should have the authority to do. Under such circumstances the writ should not issue. This conclusion makes it unnecessary for us to decide the other questions presented.

The writ is denied.