No. 36,276

THE STATE OF KANSAS, ex rel. ALLEN MEYERS, County Attorney of Shawnee County, *Plaintiff,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SHAWNEE et al., *Defendants.*

(151 P. 2d 700)

Opinion filed September 30, 1944.

*Allen Meyers,* county attorney, argued the cause, and *Herbert Marshall,* assistant county attorney, was on the briefs for the plaintiff.

*Lester M. Goodell,* of Topeka, argued the cause, and *E. R. Sloan,* of Topeka, was on the briefs for defendant Board of County Commissioners.

*Ralph F. Glenn,* of Topeka, argued the cause for defendant Elburn M. Beal.

The opinion of the court was delivered by

PARKER, J.: This is an original proceeding in mandamus brought by the state of Kansas, on the relation of the county attorney of Shawnee county, to require the board of county commissioners of such county to direct and require the sheriff thereof, at a forthcoming tax sale to be held under provisions of the statute pertaining to judicial foreclosure and sale of real estate for delinquent taxes, to bid in all tracts of real estate in the name of the county at such sale where the highest private bid therefor did not equal the amount of the entire lien for taxes thereon, including penalties, interest and costs.

For some time prior to August 31, 1944, certain officials of Shawnee county had been unable to agree on the force and effect to be given language to be found in G. S. 1943 Supp. 79-2804 relating to the duty of the board of county commissioners to have bids made on real estate when offered for sale at public auction at a tax foreclosure sale advertised by the sheriff pursuant to provisions of that section of the statute. On that date, with what appears to have been

an intention to create a situation which would eventually result in judicial construction of such language, the board met in special session and passed a resolution the pertinent portions of which read:

"BE IT RESOLVED by the Board of County Commissioners of Shawnee County, Kansas, sitting in special session called this 31st day of August, 1944, that the Sheriff of Shawnee County, Kansas, acting for and on behalf of this Board, shall attend the tax foreclosure sale in case No. 61615, now pending in the District Court of Shawnee, County, Kansas, 3rd. Division, said sale having been advertised and to be held at the Court House on September 5, 1944, and at said time said Sheriff, acting for this Board of Shawnee County, shall make the following bid and no other upon real estate Item No. 654, being one of the properties involved in said foreclosure action and to be sold at said time and place, namely, the amount of $175.00, the same being the full amount of the market value of said Item No. 654 of real estate.

"After making said bid in the amount of $175.00, the sheriff shall refrain from making further bids, and if a bid be received for said property in any amount in excess of $175.00, the same being the amount found by this Board· to be the full market value of said property, then said sheriff shall sell said property to such bidder if he be the highest bidder therefor, and this he shall do irrespective of whether or not said bid equals the entire amount of the lien for taxes, costs and penalties due against said Item No. 654 of real estate, said lien being in the amount of $575.59.

"The Board of County Commissioners of Shawnee County, Kansas, has passed this resolution pursuant to G. S. 1943 Supp. 79-2804."

The same day the county attorney filed in this court a motion for a writ of mandamus containing allegations, which if his construction of the statute was upheld would entitle the state to a writ of mandamus, while the board of county commissioners and the sheriff, who had been made parties defendant, each filed answers conceding it was their intention to and they would proceed with the sale, so far as bidding on the particular tract referred to in the resolution was concerned, in the manner provided for therein and would follow a similar procedure with respect to sale of all other tracts to be sold on the same day pursuant to the notice of sale published by the sheriff in the tax foreclosure proceeding. No useful purpose would be served by giving space to a recital of the specific allegations to be found in the pleadings to which we have just referred. It suffices to say, since it is conceded the bid fixed in the resolution represents the full market value of the tract referred to therein, the sole question they present is whether at a tax sale held pursuant to the statute authorizing a judicial foreclosure and sale of real estate by the county for delinquent taxes the Board of County Commis-

sioners is required, whenever the highest bid for a tract of land offered for sale does not equal the amount of the entire lien for taxes thereon, including penalties, interest and costs, to direct the sheriff to bid in such property in the name of the county, or whether such board may fix an upset price thereon and permit it to be sold to other bidders when their bids exceed the amount of such upset price notwithstanding such bids do not equal the sum total of the various amounts properly chargeable to each tract of land under provisions of the statute.

G. S. 1943 Supp. 79-2804 prescribes procedure to be followed by the sheriff in making sale of properties after rendition of judgment in a tax foreclosure proceeding. Among other things it provides:

". . . On the day fixed for the sale by such notice the sheriff shall offer each such tract, lot or piece of real estate for sale, separately, and the same shall be sold at public auction for the highest and best bid obtainable therefor: Provided, *That in the event the highest bid on any tract, lot or piece of real estate does not equal the amount of the entire lien for taxes thereon, including penalties, interests and costs, the sheriff or such other person as may be directed by the board of county commissioners shall bid at such sale in the name of the county such amount as the county commissioners shall direct."* (Emphasis ours.)

It is the language to be found in the portions of the section of the statute just cited, and particularly that we have underscored for purposes of emphasis, which really gives rise to this lawsuit. As heretofore indicated, the plaintiff interprets it to mean that at a judicial tax sale no one but the county can purchase property there offered at public auction for less than the amount of the entire lien thereon, including penalties, interests and costs.

Since neither the plaintiff nor defendant cite any authorities in support of their respective positions and the question is obviously one of first impression we must determine whether plaintiff's contention can be sustained from an examination of the statute and the application of well-known rules of statutory construction.

When it is contended the terms of a statute are obscure or uncertain the cardinal rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature in enacting it governs when that purpose and intent is ascertainable from the language to be found therein (*Hunziker v. School District,* 153 Kan. 102, 107, 109 P. 2d 115). Other fundamental rules of interpretation, dealing expressly with the question of how courts arrive at the intention of the legislature as expressed

in the language of various statutes, have been repeatedly announced and applied by this court throughout its history.

In *Alter v. Johnson,* 127 Kan. 443, 445, 273 Pac. 474, we said:

"A primary rule of construction is that the intention of the legislature is to be derived from its language, and when it is not obscure or uncertain there is no reason for a court to look beyond the words used in search of what the legislature intended to enact when the language employed clearly shows what it did enact."

In *Iola B. & L. Ass'n v. Allen County Comm'rs,* 152 Kan. 365, 103 P. 2d 788, it was held:

"In construing a statute the legislative intention is to be determined from a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so far as to make them consistent and sensible." (Syl. ¶ 2.)

The legal principle just quoted is approved and elaborated on in *State, ex rel., v. Moore,* 154 Kan. 193, 117 P. 2d 598.

In *Motor Equipment Co. v. Winters,* 146 Kan. 127, 69 P. 2d 23, we announced that in determining legislative intent it was essential to consider statutes in existence when the statutes involved were enacted. We stated in *Ruppenthal v. Maag,* 153 Kan. 588, 591, 113 P. 2d 101, that the best means of ascertaining just what was the legislative intent is to fix what the situation was at the time of the enactment of a particular act. And, in *Johnson v. Hensley,* 150 Kan. 96, 102, 90 P. 2d 1088, we recognized that the history of statutes involved might properly be considered as an aid in determining such intent.

With the legal principles to which we have just referred firmly established we direct our attention to the section of the statute in controversy, and for such aid as they may be in enabling us to reach a proper conclusion as to its meaning, to terms and provisions of other sections of the act (G. S. 1943 Supp., ch. 79, art. 28), authorizing the judicial foreclosure and sale of real estate by the county for delinquent taxes.

The history of events leading up to the enactment of the present statute and the situation existing at that time is well known and can be briefly stated. For a long time there had been in force and effect in Kansas a law (Laws 1901, ch. 392, G. S. 1935, art. 28, ch. 79) authorizing judicial foreclosure and sale of real estate by counties for delinquent taxes. It had proved to be far from satisfactory and was little used for the purpose for which it had been enacted with

the result that on the tax rolls of many of the counties of the state were to be found numerous tracts of real estate on which taxes had not been paid for a long period of years. In an attempt to remedy the situation the legislature of 1941 in a comprehensive statute (Laws 1941, ch. 375; G. S. 1941 Supp, 79-2301 to 79-2809) revised and amended the earlier law, to which we have just referred, relating to the sale of real estate for taxes. Sections 79-2801 to 79-2809 dealt specifically with judicial foreclosure and sale. Section 79-2801 expressly directed the institution of legal proceedings for that purpose and with the view of insuring uniform application and effective operation of the act provided that any member of the board of county commissioners or any county attorney who should fail to perform the duties required of him by its provisions should forfeit his office. Section 79-2804 dealt with the sale of real estate after judgment and so far as important for our purpose reads:

". . . On the day fixed for the sale by such notice the sheriff shall offer each such tract, lot or piece of real estate separately for sale, and the same shall be sold at public auction to the highest and best bid therefor: Provided, That in the event the highest bid on any tract, lot or piece of real estate does not equal the amount of the entire lien for taxes thereon, including penalties, interest and costs, the sheriff may at the direction of the board of county commissioners bid in said real estate in the name of the county."

Subsequent to enactment of the 1941 statute its validity was challenged and upheld by this court (*State, ex rel., v. Wyandotte County Comm'rs*, 154 Kan. 222, 117 P. 2d 591). Within a short time after it became effective numerous foreclosure proceedings were instituted under its provisions, and sales of real estate to private individuals for less than the amount of the entire lien for taxes became so frequent as to make them matters of common knowledge. Prior to the 1943 session of the legislature at least one case involving the validity of such a sale, although decided after its adjournment, was pending in this court (*Mitchell County Comm'rs v. Allen*, 156 Kan. 701, 137 P. 2d 143).

Notwithstanding the situation to which we have referred the 1943 legislature did not see fit to expressly provide that sales of real estate for taxes could not be made to individuals unless their bid equaled the amount of the entire lien for taxes thereon. Nor did it specifically provide that such properties should be bid in by the county when individuals did not bid up that amount. The only change made in the amendatory statute (Laws 1943, ch. 302, § 4, G. S. 1943 Supp. 79-2804) so far as it pertained to persons who could bid in property

at the sale when compared with the earlier one (G. S. 1941 Supp. 79-2804), was a substitution of the words "the sheriff or such other person as may be directed by the board of county commissioners shall bid at such sale in the name of the county such amount as the county commissioners shall direct" in lieu of the words "the sheriff may at the direction of the board of county commissioners bid in said real estate in the name of the county."

The plaintiff insists the change in language to which we have just referred indicates an intention on the part of the legislature to prohibit purchases by individuals at judicial tax sales when their bid does not equal the entire amount of the tax lien. Can that be true?

It is not without some difficulty we refrain from application of the rule announced in our early decisions that when the legislature has expressed its will in plain and unambiguous language, courts are bound to say it meant what it has clearly expressed. (See *Dudley v. Reynolds,* 1 Kan. 285, 289, and *Ayers v. Comm'rs of Trego Co.,* 37 Kan. 240, 15 Pac. 229.) Certainly sound argument may be advanced in support of a conclusion that when the legislature provides that at a sale at public auction to the highest and best bidder the sheriff shall bid in the name of the county "such amount as the county commissioners shall direct" that language means just what it says and permits them as the officials charged with the management of the county's business to use their own judgment as to what the county's bid shall be. But passing that point and assuming such language is doubtful and uncertain can plaintiff's position be upheld? We do not think so.

Considered in the light of the history leading up to and prompting legislation pertaining to judicial foreclosures and sale of real estate for taxes and the conditions existing at the time of its enactment, a careful examination of the provisions of G. S. 1943 Supp. 79-2804 convinces us the language there found clearly evidences an intention to promote competitive bidding at tax sales and insure the sale of delinquent tax properties to the highest and best bidder at public auction so that taxes assessed against them could be promptly distributed to the various taxing agencies entitled thereto. We are also convinced that it plainly indicates an intention to permit the board of county commissioners to exercise their discretion and judgment as to how much they would be willing to bid on lands to be offered at such sales rather than to require them to bid in all properties there offered when other bidders had not deemed them of suf-

ficient value to justify a bid equal to the entire amount of the tax lien. Any other construction would bring about a situation where there would be no sale regardless of the value of the property offered, except to the county, unless the bid of some individual equaled the amount of the entire lien for taxes including penalties, interest, and costs; the county would be required to bid in most of the tracts of land offered for sale—under the stipulation of facts of this case 95 percent of the total number to be sold—for want of private bids, at a figure which in the judgment of the commissioners was far more than their actual value and would not permit their resale at that price; thereafter, having failed to obtain the minimum price required by the provisions of G. S. 1943 Supp. 79-2804(f) within six months from the date of the sale, the board of county commissioners would then be required to reduce the price on each tract to whatever sum was deemed to be its market value and could sell the same at that price to whomsoever it might see fit at private sale. The net result would entail additional expense to the county; it would, at least to a certain extent do away with the benefits of competitive bidding authorized and permitted by the present statute, and it would bring into existence conditions almost as confusing and unsatisfactory, if not more so, than existed before it was enacted, thereby defeating its very purpose and intent.

When considered as a whole we find nothing in other provisions of the act relating to judicial foreclosure and sale of real estate to preclude the conclusion we have just announced. We do, however, find one section which, if it does not compel such conclusion, certainly substantiates and fortifies it. We direct attention to G. S. 1943 Supp. 79-2808, which, it should be noted, was lifted verbatim from the 1941 act and placed in the present enactment. It reads:

"The county treasurer of any county *in which any real estate has been sold for less than the full amount of the taxes, penalties, interest and costs under the provisions of section 20[79-2804] or 26 [79-2804f]* of this act, shall certify to the auditor of state the amount of the proper proportion of state tax *thus uncollected* and the county shall be entitled to credit therefor, and the auditor and treasurer of state shall credit the county with the amounts of the same: . . ." (Emphasis ours.)

In our opinion the language which we have emphasized conclusively indicates, that not only at the time the original foreclosure statute was amended, but on the date of the enactment of the present one as well, the legislature contemplated sales of the property

for delinquent taxes under G. S. 1943 Supp. 79-2804 to individuals for less than the amount of the entire lien for taxes thereon including penalties, interest and costs.

From what has been said it necessarily follows that the action contemplated by the county commissioners in fixing an upset price on tracts of real estate to be sold for delinquent taxes under judicial foreclosure and in directing the sheriff to bid the amount of such upset price, and no more, when such properties were offered for sale pursuant to the decree in that proceeding was in substantial compliance with the provisions of chapter 79, article 28, G. S. 1943 Supp.

The writit is denied.