No. 36,585

Tom Kelly and Nora Rose Kelly, Father and Mother of Mildred Vivian Kelly, Deceased, *Appellees*, v. The Lassen Hotel Company and The Century Indemnity Company, *Appellants*.

(168 P. 2d 527)

Opinion filed May 4, 1946.

Carl I. *Winsor*, of Wichita, argued the cause, and *Harlin E. Bond* and *Rupert Teall*, both of Wichita, were on the briefs for the appellants.

*E. P. Villepigue*, of Wichita, argued the cause, and *I. H. Stearns*, of Wichita, was on the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: This is an appeal by an employer and its insurance carrier from an award under the workmen's compensation act. Death resulted from the employee's injury and the claimants are her parents, who were in part dependent upon her earnings. The only question presented is whether the amount of the award was properly computed.

The facts are not seriously in dispute. Mildred Vivian Kelly was employed as an elevator operator by the Lassen Hotel Company in Wichita. On September 23, 1945, after she had been working six weeks, she met with an accidental injury which resulted in her death on the same day. It is agreed that the hotel company was under the workmen's compensation act; that the injury arose out of and in the course of the employment; and that proper notices were given. Mildred Kelly was unmarried and had lived with her parents, Tom Kelly and Nora Rose Kelly, in Montana and Colorado prior to their coming to Wichita on August 3, 1945; the commissioner found that during 1944 she worked six or seven months as an elevator operator in Butte, Mont., earning $15 a week and giving $10 out of this weekly wage to her parents; that her employment during 1945 was for the six weeks she had worked for the Lassen Hotel; that her wages were 35 cents per hour and during the six weeks she earned $106.40; that she gave her parents $7 out of her first check, all of her second check which was $31.41, and $14 out of her third check, and that after her death her father collected her fourth check which was for $19.40; and that at the time of her injury and death her father was not able to support the family without the help of her earnings. The commissioner further found that the deceased's "average annual earnings" were $921.96 and that her contributions to the claimants for the two years preceding her death were $352.41. On the basis of these figures the commissioner made an award to the parents, as partial dependents, in the sum of $528.60. The record does not specifically so state, but it is apparent that the commissioner assumed employ-

ment for thirty weeks during 1944, with contributions of $300 to the parents during that year. In computing contributions for 1945 the commissioner added the three amounts given to the parents totaling $52.40, but did not include any contribution out of the check of $19.40 which the father collected after his daughter's death. Adding $300 for 1944 and $52.40 for 1945 gave a figure of $352.40 for the two years or an "average annual contribution" of $176.20. Multiplying this by three produced a figure of $528.60 as the amount of the award. It is thus clear that in computing "average annual contributions" to the parents for the two years, the commissioner used only *actual* contributions. Now her *actual earnings* were $450 for 1944 and $106.40 for 1945, or a total of $556.40. That made average *actual* annual earnings of $278.20. But in computing *average earnings* the commissioner did not use the figures for *actual* earnings but properly used the formula set out in the statute—to which reference will presently be made—and arrived at an "average annual earning" of $921.96. At this point it will suffice to say that for the purpose of fixing the amount of the award, the statute provides for figuring earnings on an annual basis even though the employee worked and had actual earnings only part of the time.

On appeal by the claimants, the district court made substantially the same findings as the commissioner had made as to *average annual earnings*. The figure found by the court was $922.13 as against $921.96 as found by the commissioner. This discrepancy may be here disregarded since the issue turns not upon the method of computing *earnings* but of computing *contributions* as a basis for fixing the amount of the award. The district court, instead of using *actual* contributions, computed contributions under the same formula as in the case of earnings, which resulted in increasing the award to $1,715.04. In other words, the commissioner established a percentage relationship between *contributions* and *earnings* by setting *actual* contributions over against *theoretical* earnings, while the district court, by using the same formula as to both, set *theoretical* contributions over against *theoretical* earnings. Substantially the same result would have been reached by the court if it had related *actual* contributions to *actual* earnings.

This preliminary statement brings us to the heart of the issue, which turns upon construction of the statute.

Section 44-510, G. S. 1943 Supp., sets out, among other provisions,

two methods to be used in computing the award to dependents in case of the employee's death. One method applies to cases where the dependents were *wholly dependent* upon the employee's earnings, and the other to cases where the dependents were *partially dependent* upon his earnings. In the present case the court found that the claimants were *partially* dependent and that finding is not disputed. But in order to consider the statutory provisions as to claimants *partially* dependent, it is necessary to consider first the provision as to those *wholly* dependent. That provision is found in section 44-510 (2) (*a*) and is as follows:

"(*a*) If a workman leaves any dependents *wholly dependent upon his earnings,* a sum equal to three times his average yearly earnings, computed as provided in section 11 [44-511] of this act, but not exceeding four thousand dollars and not less than two thousand dollars . . ." (Italics supplied.)

In order to fix the award, it thus becomes necessary to examine section 11 (G. S. 1943 Supp. 44-511) in order to compute the "average yearly earnings." It is not necessary here to set out "section 11" in full. It will suffice to say that the section provides for reducing the earnings to an annual basis regardless of whether the employee worked all or only part of the year. It provides that "the weekly wage shall be found by multiplying the daily wage by five, or if the employee worked a greater proportion of the week regularly, then by five and one-half, six, six and one-half, or seven, according to the customary number of working days constituting an ordinary week in the character of work involved," and that five days shall constitute a minimum week. Having thus determined the weekly wage, the yearly wage is to be found by multiplying the weekly wage by fifty-two. In case the rate of wages of the employee is fixed by the hour, "the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of work involved."

It is thus clear that in case of *total* dependency, the amount of the award is not determined on the basis of the *actual* earnings during the two years preceding the death, but is computed upon an annual basis regardless of the time employed. To illustrate, if an employee had earnings of $40 a week for only one week in each of the two years preceding death, the average annual earnings for the purpose of computing the award would be the same as though he had been employed for fifty-two weeks in each of the two years at $40 a week. After computing the annual earnings for each of

the two years in the manner indicated, the two sums are then added together and divided by two to determine the "average annual earnings." Such "average annual earnings"—whether actual or theoretical—are then multiplied by three to determine the amount of the award, with the proviso that the award cannot exceed four thousand dollars nor be less than two thousand dollars. In other words, if three times the average annual earnings, so computed, is less than two thousand dollars, the award is raised to two thousand dollars, and if more than four thousand dollars, the award is reduced to four thousand dollars.

We now examine the statutory provision for fixing the amount of the award in the case of *partial* dependency. That provision is found in 44-510 (2) (*b*), G. S. 1943 Supp., and is as follows:

"(*b*) If a workman does not leave any such dependents, [wholly dependent] but leaves dependents *in part dependent on his earnings,* such *percentage* of the sum provided in paragraph 2 (*a*) of this section as the *average annual contributions which the deceased made* to the support of such dependents during the two years preceding the injury *bears to his average annual earnings* during such two years." (Italics supplied.)

It is thus clear that it is first necessary to determine what the award would have been if the claimants had been *wholly* dependent. Such amount we will designate as "amount of award under (2) (*a*)." The next step is to determine what percentage of such amount is to be used in the case of *partial* dependents. That percentage is determined by relating *"average annual contributions"* to *"average annual earnings"* during the two years preceding the injury. At this point the controversy arises. Appellants say that *"average annual contributions"* in (2) (*b*), *supra,* means *actual* contributions, but that *"average annual earnings"* does not mean *actual* earnings but means earnings, whether actual or theoretical, as computed under "section 11" (44-511). In other words, in determining a percentage relationship between *contributions* and *earnings,* appellants would not use *actual* contributions as against *actual* earnings, nor would they use *theoretical* contributions as against *theoretical* earnings computed to an annual basis under the same statutory formula. They insist that while actual earnings, however small, must be stepped up to a theoretical *annual* basis, only *actual* contributions can be used in determining the percentage relationship between the two.

In an effort to clarify this rather technical analysis, let us put appellants' contention in another form. Construing paragraph (2)

(b), *supra,* they read into the statute—as our prior decisions have done—the words "computed as provided in section 11" after the words "average annual earnings." But they urge that as to "average annual contributions," in the same paragraph, we are not warranted in reading into the statute, by logical implication, the words "computed in the same manner as provided in section 11."

It is a fundamental rule of construction that statutes should be construed to effectuate the evident legislative intent, if that can be done without doing violence to plain provisions. In this case, the legislative intent is clear. Unquestionably the intent was that the award to *partial* dependents should be such percentage of the sum provided for *total* dependents—(2) (*a*)—as the employee's contributions bore to his earnings during a contemporaneous period. No other interpretation gives any logical meaning to paragraph (2) (*b*). Now, either one of two ways of construing the statute would give practical effect to that intent. First, we might have construed both (2) (*a*) and (2) (*b*) with strict literalism and refused to read any words into either paragraph by way of implication. The result of that construction would have been that the words "average annual earnings" in (2) (*a*) would have meant an amount determined under the formula prescribed in "section 11" (44-511), while the same words in (2) (*b*) would have meant only *actual* earnings, since the words are not there qualified by the phrase "computed as provided in section 11." If this had been done, then the *percentage* would have been determined by relating *actual* contributions to *actual* earnings, covering the same period in either case, whether that period be one week or fifty-two weeks in a year. While much might be said in support of such a construction, it would have been confusing in that the words "average annual earnings" would mean one thing in (2) (*a*) and another thing in (2) (*b*). Accordingly our decisions have not adopted that construction but have, in effect and with much reason, inserted in (2) (*b*) the words "computed as provided in section 11."

Having, by our prior decisions, written into paragraph (2) (*b*) as a reasonable implication the clause above indicated with reference to "average annual earnings," a wholly illogical result would be reached if we now say that a similar construction, by reasonable implication, cannot be made with reference to "average annual contributions" in the very same sentence. Certainly if the legislature intended, as we have heretofore construed the statute, that "aver-

age annual earnings" under (2) (*b*) means theoretical earnings for a year even though the employee worked only part of the year, then it must also have meant that "average annual contributions" as used in the same sentence meant contributions computed on an annual basis in the same manner. The relationship between contributions and earnings must, of course—as heretofore stated—be based upon the contemporaneous period covered by the earnings and the contributions. For instance, if the employee worked only five weeks during the year at $40 a week, his average weekly earnings would be $40 and his "average annual earnings" computed under "section 11." (44-511) for the purpose of fixing the award would be fifty-two times $40. If out of each week's earnings of $40 he contributed $15, his average weekly contributions would be $15, and his "average annual contributions" computed in like manner for purposes of fixing the award would be fifty-two times $15. If, however, he made a contribution of $15 out of one week's earnings only, and made none out of the earnings during the other four weeks, his average weekly contributions would be one-fifth of $15 or $3, and the "average annual contributions" for the purpose of computing the award would be fifty-two times $3. This is the clear legislative intent and no other construction gives sense to the statute.

One illustration will serve to show what sort of results would be reached under the construction urged by appellants. Let us assume that an employee works every week for the two years preceding his accidental death at a weekly wage of $25, and that he contributes $10 every week to his dependents. The average annual wage would thus be $1,300. In case of *total* dependency, the award would be three times that amount or $3,900. In case of *partial* dependency, the award would be three times the average annual contributions of $520 or $1,560. Now let us assume that the employee actually worked only *one* week in each of the two years preceding his death. This would make *actual* average earnings of only $25 and an *actual* average contribution of only $10. Nevertheless, in the case of *total* dependency, all agree that the award would be figured precisely the same as though he had worked every week during the two years and would be $3,900. But if appellants' theory is correct, a wholly dissimilar result would be reached in the case of *partial* dependency. Under their construction the *partial* dependents would get only $30. In other words, while the award would remain the same for *total* dependency—$3,900—the award for *partial* dependency under the

same situation would be reduced from $1,560 to $30. The statute does not require a construction that would bring about such an absurd result. "Average annual contributions" under (2) (*b*) should be related to the same period within which the earnings from which they were paid were received. The same method should be used for both contributions and earnings, by reducing the actual earnings and the actual contributions to an average weekly basis and multiplying by fifty-two to determine annual earnings and contributions. This is substantially what the trial court did.

While the question is not raised in the instant case, it is well to note here that we have held that while the value of the workman's board and room while living with those who make claim of dependency may be deducted from his contributions for the purpose of determining whether dependency upon his earnings exists, it cannot be deducted—after the fact of dependency has been established—when applying the statutory formula for determining the amount of the award. (*Proffitt v. Aldridge,* 154 Kan. 468, 474, 119 P. 2d 523.)

In one minor particular, we think the trial court erred in its computation. In computing annual contributions the trial court included the full amount of the check for $19.40 collected by the father after the death. It is true that the full amount of the check was earned by the deceased, but we see no basis for including the full amount of the check in computing weekly contributions. Since the record does not disclose the exact periods covered by the various checks received from the Lassen Hotel, we are unable to set out precisely what the award should be. The record discloses that three contributions were actually made totaling $52.41. From this record we do not know the exact period covered by the earnings from which these three contributions were made. We only know that the earnings for that period were $106.40 minus $19.40 or $87. The average weekly contributions should have been computed by using the period covered by the earnings from which they were made. Having so determined the average weekly contributions, the "average annual contributions" would then be determined as herein indicated.

There is one other feature in which the record does not disclose the facts. We are told that the earnings for 1944 were $450 and for 1945 they were $106.40. Apparently the court used the calendar years as a basis for its computation. The statute does not specify calendar years but provides for computation on the basis of the two

years preceding the death. Whether the result would be the same in this case we cannot tell. The deceased met her death on September 23, 1945, and if the first year prior to that would include any part of the payments in Montana, the result would be somewhat different. We can, therefore, only state the method to be followed in making the computation.

In determining the amount of the award in the case of partial dependency, the formula to be used is as follows:

$$\frac{\text{Average annual contributions}}{\text{Average annual earnings}} \times \text{Amount of award under (2) } (a)$$

such "average annual contributions" and "average annual earnings" being computed in similar manner, as hereinbefore indicated.

As before stated, the "amount of award under (2) (a)" in the above formula is definitely fixed by statute. It is "a sum equal to three times his [workman's] average yearly earnings as provided in section 11 [44-511] of this act, but not exceeding four thousand dollars and not less than two thousand dollars . . ." It is apparent, therefore, that in all cases where three times the average annual earnings is not less than $2,000 nor more than $4,000, the same result would be reached simply by multiplying the average annual contributions by three (see *Burgin v. Western Coal & M. Co.*, 135 Kan. 330, 10 P. 2d 908). This short method, however, would not be accurate in a case where three times the average annual earnings is either less than $2,000 or more than $4,000. In the instant case the short method would be accurate since three times the average annual earnings falls between the figures $2,000 and $4,000. The safe course is to follow the formula above set out which gives the proper result in any case.

For reasons indicated, the proper award in this case may or may not vary slightly from the amount fixed by the trial court. It is evident, however, that the court adopted a construction of the statute in harmony with what has here been said. Accordingly the judgment should be affirmed with authority to correct the award, if necessary, to conform strictly with this opinion. It is so ordered.