No. 36,904

NATURAL GAS PIPELINE COMPANY OF AMERICA, *Appellant*, v. THE
STATE COMMISSION OF REVENUE AND TAXATION et al., *Appellees*.

(183 P. 2d 234)

CHARLES A. MAGAW,
judge. Opinion filed July 12, 1947.

*James D. Dye,* of Wichita, argued the cause and was on the briefs for the
appellant.

*Mason Mahin,* of Smith Center, argued the cause, and *Paul H. Edgar,* of
Topeka, was with him on the briefs for the appellees.

*C. J. Putt, T. M. Lillard, John E. DuMars,* all of Topeka, and *W. F. Lilles-
ton,* of Wichita, as *amici- curiae.*

The opinion of the court was delivered by

PARKER, J.: This action was instituted under the declaratory
judgment law to obtain judicial interpretation of certain provisions
of the Kansas compensating tax act. It was submitted in the court
below upon the pleadings and stipulations of fact. The plaintiff
appeals from a judgment construing the involved provisions of the
act in accord with the construction placed thereon by the defendants.

Plaintiff, a Delaware corporation, owns and operates an inter-
state pipe-line system and is engaged in the business of transport-

ing natural gas from a point in the state of Oklahoma to points in the states of Kansas, Nebraska, Iowa and Illinois. In the transaction of its business it sells and delivers such commodity to distributors and consumers in those states. The defendants are state agencies and officials, charged by statute with the administration and enforcement of the Kansas compensating tax act as amended by chapter 370 of the Laws of 1945, now G. S. 1945 Supp. 79-3701 to 79-3711, inclusive.

Inasmuch as certain sections of the act are essential to a proper understanding as well as the determination of the issue raised by the pleadings they will be set forth before further reference is made to the factual situation upon which that issue depends.

G. S. 1945 Supp. 79-3702 defines terms used in the act and so far as pertinent, reads:

"(c) The word 'use' means and includes the exercise within this state by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of the property in the regular course of business and except storage as hereinafter defined.

"(d) 'Storage' includes any keeping or retention in this state for any purpose except sale in the regular course of business or subsequent use solely outside this state of tangible personal property purchased from a retailer."

G. S. 1945 Supp. 79-3703 relates to the tax imposed. It provides:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using, storing, or consuming within this state any article of tangible personal property purchased subsequent to June 30, 1945. Such tax shall be levied and collected in an amount equal to the purchase price paid by the taxpayer multiplied by the rate of two percent. All transactions involving compensating tax or use tax prior to July 1, 1945, shall be administered under the law as it exists prior to that date."

G. S. 1945 Supp. 79-3704 exempts certain persons from liability for payment of the tax levied by virtue of the preceding section. It reads:

"The provisions of this act shall not apply:

"(a) In respect to the use, storage or consumption of any article of tangible personal property brought into the state of Kansas by a nonresident who is within the state for not to exceed sixty days for his or her use or enjoyment while within the state; or by a railroad or public utility for consumption or movement in interstate commerce . . ."

The first six paragraphs of plaintiff's petition relate to the capacity of the parties, the nature of plaintiff's business, the manner in which

it is carried on, and other formal matters, none of which are in controversy or need be related. Paragraph 7 states:

"That plaintiff has exercised and will exercise, within the state of Kansas the privilege of using, storing, or consuming articles of tangible personal property purchased and to be purchased subsequent to June 30, 1945, which property is and will be of the following description; transmission pipeline of various dimensions, casing, flanges, coupling, headers, tees, valves, compressor engines, generators, meters, regulators, tanks, separators, pumps, motors, oilers, structural and building materials, piping for water system, water well equipment, telephone wire, poles, cross-irons and appurtenances, radios, aerials and appurtenances, miscellaneous materials and supplies, and sundry equipment and machinery pertinent to the operation of an integrated interstate natural gas pipeline system; all of which articles were brought into the state of Kansas with the design and purpose of incorporating the same into the transportation system owned by plaintiff as an integral part thereof, by way of repair, maintenance, construction, reconstruction, replacement, addition or extension thereto as a necessary incident and requirement for the operation thereof. That plaintiff intends, in the future, to bring into the state of Kansas items of tangible personal property of like description and nature for the same purpose. That all of such property heretofore or hereafter brought into the state of Kansas has been or will be used according to such design and purpose."

Then such pleading alleges the defendants have made demand for and are about to assess and collect compensating taxes against plaintiff in respect to all property of the kind and nature described in paragraph 7 brought into the state by it prior to or after the institution of the action for the uses and purposes therein described.

In conclusion it states that although plaintiff is ready and willing to pay any and all use or compensating taxes lawfully assessed against it, or that may be collectible from it, under and by reason of the Kansas compensating tax act the items of tangible personal property described in paragraph 7 were and will be brought into the state of Kansas by it as a "public utility for consumption or movement in interstate commerce" and charges that under the provisions of section 4(a) of the act it is exempt from the payment of such tax in respect to all such articles of property and that defendants have no lawful right to assert, assess, demand or collect, use or compensating taxes against it by reason of its use, storage or consumption within the state of Kansas.

Defendants in their answer concede plaintiff's business is interstate in character. They admit they have advised plaintiff it is liable under the act for the use or compensating tax in respect to all articles of tangible personal property described in paragraph 7 of the petition and assert that they intend to and will collect taxes

thereon unless the act is judicially construed to exempt it from payment thereof. They then specifically deny that such property was or will be brought into the state by plaintiff as a public utility for consumption or movement in interstate commerce and charge that it is taxable under the law and the rule and regulation set forth in paragraph 9 of their answer.

The rule and regulation referred to in paragraph 9 of the answer is identified therein as rule No. 18 of the compensating tax rules and regulations. It was promulgated by the director of revenue, approved by the commission, and has been filed with the revisor of statutes, as provided for and required by G. S. 1945 Supp., ch. 77, art. 4. So far as applicable to the issue involved it reads:

"*a.* All pipe lines engaged in the transportation of property shall be deemed to be a public utility within the meaning of the term 'public utility' as used in Section 79-3704(a) of the act.

"*b.* All tangible personal property purchased out of the state and brought into the state of Kansas for use, storage, or consumption by pipe lines is subject to the tax in the same manner as is tangible personal property brought into the state by other firms, persons, or corporations, except as exempted herein.

"*c.* Charges for electrical energy, gas, motor fuels, distillate, etc., sold to pipe line companies, and consumed in generating power necessary to transport gas, gasoline, crude oil, etc., in interstate commerce through the pipe lines, are exempt from the compensating use tax."

To the answer the plaintiff filed a reply alleging in substance that rule 18 as promulgated and adopted by the defendants is invalid and of no force and effect for the reason that the enforcement of such rule will result in depriving it of the benefits of the exemption granted to railroads and public utilities by the express terms of G. S. 1945 Supp. 79-3704 (a).

Having joined issue on the question, conceded by the parties to be the only one involved in the action, whether plaintiff is liable for payment of the compensating tax on the articles of property described in paragraph 7 of the petition when brought into the state of Kansas in the manner and under the conditions and circumstances therein set forth the cause was submitted in the court below upon the following stipulated facts:

"The parties to the above-entitled proceeding by their respective attorneys of record hereby stipulate and agree that the following facts may be taken as true, provided, however, that this stipulation is without prejudice to the right of either party to introduce further evidence not inconsistent with the facts herein stipulated.

"Plaintiff's business and commerce is and was at all times entirely interstate in character.

"Plaintiff is a public utility within the meaning of the term, 'public utility,' and as used in Section 4 (*a*) of Chapter 370, Laws of Kansas, 1945.

"Plaintiff is a public utility within the terms of Rule No. 18 of the compensating tax rules and regulations as promulgated by the Director of Revenue, approved by the Commission of Revenue and Taxation and filed with the Revisor of Statutes.

"A description of those articles of tangible personal property enumerated in paragraph 7 of plaintiff's petition which have been or will be brought into the state of Kansas by plaintiff, and the manner and method of their use by plaintiff in the operation of its interstate transmission system is as follows: (Detailed description omitted.)

. . . . . . . . . . . . . . .

"The articles of tangible personal property described in Paragraph 7 of plaintiff's petition will be worn out or their useful life exhausted over a period of years through wear and tear or natural causes for the purpose purchased through their use and employment by plaintiff in the operation of its interstate transmission system in the manner set forth in paragraph IV of this stipulation but defendants do not agree that the activities of plaintiff with respect to the use and employment of said articles of tangible personal property amount to or result in a consumption thereof within the meaning of Section 4 (*a*) of Chapter 370, Laws of Kansas, 1945, as interpreted in defendants Rule No. 18 set forth in defendant's answer.

. . . . . . . . . . . . . . .

"It is further stipulated and agreed by and between the parties hereto that all of the tangible personal property described in paragraph VII of the Plaintiff's Petition and paragraph IV of the Stipulation of Facts filed herein is purchased by plaintiff outside the State of Kansas and is brought into the State of Kansas for the purposes described in said Petition and Stipulation, but that prior to such use, said property will be temporarily held, stored or warehoused until such time as such property can be installed or put to use in replacement of worn out or damaged equipment or in new installations in plaintiff's pipeline system."

Based on the foregoing pleadings and facts the trial court rendered judgment declaring that under the provisions of the Kansas compensating tax act: (1) The property involved in the action is not brought into the state by plaintiff "for consumption or movement in interstate commerce" as that term is used in G. S. 1945 Supp. 79-3704(a) and that nothing to be found therein exempts plaintiff from payment of taxes imposed on such property by the terms of G. S. 1945 Supp. 79-3703, and (2) rule 18 of the Kansas compensating tax rules and regulations is a lawful and valid regulation.

In advance of determination of liability under the present act it

will be necessary to give some consideration to the historical events responsible for its enactment in the present form.

The original Kansas compensating tax law (Laws 1937, ch. 375) levied a tax or excise for the privilege of using articles of tangible personal property within the state, purchased subsequent to May 30, 1937. Under that statute no tax was levied, nor was there an attempt to levy a use tax, on tangible personal property purchased outside the state and brought therein for use by a railroad or public utility engaged in carrying on interstate business, for the reason it was conceded that such a tax would be a burden on interstate commerce and therefore unconstitutional (see *Pacific Telephone and Telegraph Co. v. Henneford,* 195 Wash. 553, 81 P. 2d 786). At the time of the enactment of the 1937 act there was in force and effect in the state of California a compensating tax law which, unlike our own, was broader in its scope and taxed the use, storage and consumption of property brought into the state. The validity of this law was challenged on the ground it violated the commerce clause of the federal constitution in proceedings which eventually reached the supreme court of the United States. On the 30th day of January, 1939, in two cases (*Southern Pacific Co. v. Gallagher,* 306 U. S. 167, 83 L. Ed. 587, and *Pacific Telephone and Telegraph Co. v. Gallagher,* 306 U. S. 182, 83 L. Ed. 595), that tribunal decided the California act did not violate the commerce clause and upheld the right of that state to collect the tax on the theory that storage of property therein, an event made taxable by the act, was an event occurring within the state after actual movement into the state in interstate commerce had ceased and prior to the use or consumption of such property in interstate commerce.

This, then, was the situation when in 1945 the Kansas legislature, cognizant of the fact the compensating tax law then in force and effect did not permit the collection of a use tax on tangible personal property purchased outside the state by a public utility engaged in the business of interstate commerce, amended that law to tax use, storage or consumption of such property.

What has been heretofore stated clarifies, if in fact it does not definitely establish, the purpose of the Kansas legislature in enacting the compensating tax act now under consideration, and brings us to the point where we can now give consideration to the force and effect of its terms with respect to the issue whether appellant is liable for the payment of compensating tax on the property described in para-

graph 7 of the petition. As we do so it is well to note the parties are in accord on many matters important to its decision. Since reference to them will simplify the issue they will now be mentioned. It is not disputed, if in fact it is not agreed, as follows:

1. So far as applicable to the case at bar the exemption clause (G. S. 1945 Supp. 79-3704) has no application to property brought into the state by a nonresident for not to exceed sixty days and for our purpose it is to be read thus:

"The provisions of this act shall not apply:

"(a) In respect to the use, storage or consumption of any article of tangible personal property brought into the state of Kansas . . . by a railroad or public utility for *consumption* or movement in interstate commerce; . . ." (Emphasis supplied.)

2. Under the two decisions in the Gallagher cases the act does not violate the commerce clause of the federal constitution and the state may lawfully collect the tax or excise imposed by the provisions of G. S. 1945 Supp. 79-3703.

3. Kansas is the only state in the nation that has a provision in its compensating tax law exempting tangible personal property brought into the state by a railroad or public utility for consumption in interstate commerce.

4. Without the exemption clause (79-3704, *supra*) appellant would be taxable under the act upon its purchases of property described in paragraph 7 of the petition.

5. Under the pleadings and stipulations of fact the question whether the legislature exempted property brought into the state for the purpose therein conceded from the tax imposed by the act (79-3703, *supra*) depends upon the interpretation or construction to be placed upon the word "consumption" as used in section 79-3704 (a) heretofore quoted.

6. The meaning of the word "consumption" as used in the section last mentioned is not defined in the act.

In determining whether the property involved is exempt it must be remembered that we are dealing with a statute which imposes a tax on all tangible personal property bought outside the state and thereafter brought into it for use, storage or consumption. Likewise, kept in mind that the section which exempts certain property from the payment of that tax does not exempt all use or storage but extends only to property brought into the state for consumption or movement in interstate commerce. Otherwise stated, the language

of the exemption section simply means that with respect to the tax imposed on use, storage or consumption by section 79-3703, there is an exemption if the property is brought into the state for such consumption or movement.

With the exemption section thus construed, what import is to be given to the word "consumption" as used therein? The question, since the legislature did not define the term, must be determined on the basis of legislative intent.

At the outset it must be conceded the word "consumption" is susceptible of various meanings. Webster's New International Dictionary defines the word as follows:

"1. Act or process of consuming; waste; decay; destruction; also, the using up of anything, as food, heat or time.

"2. The use of (economic) goods, resulting in the diminution or destruction of their utilities—opposed to production. Consumption may consist in the active use of goods in such a manner as to accomplish their direct and immediate destruction, as in eating food, wearing clothes, or burning fuel; or it may consist in the mere keeping, and enjoying the presence or prospect of, a thing, which is destroyed only by the gradual processes of natural decay, as in the maintenance of a picture gallery.

"3. A progressive wasting away of the body, esp. that attendant upon pulmonary phthisis, called pulmonary consumption; hence, pulmonary phthisis or tuberculosis. See Phthisis, Tuberculosis."

From the foregoing definition it is apparent the term as used in the act in question with respect to tangible personal property may refer to its continued use under circumstances where it will be destroyed by gradual processes or its use under conditions where it will be immediately destroyed or exhausted, or it may have reference to both.

Appellant, recognizing the necessity for judicial ascertainment of the meaning of the term as used in the act, directs our attention to G. S. 1935, 77-201, *Second,* which reads:

"Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

It contends the word "consumption" is of common and popular usage and the statutory rule just quoted requires that it be construed to apply to continued use as well as immediate destruction and exhaustion of the property. With this contention we cannot agree. Consumption as applied to use of goods in interstate commerce is a technical term and we are required to ascertain the in-

tent and the purpose of the legislature in making use of it in the act in controversy, not from the statutory rule to which appellant refers but from well-established rules of statutory construction to be found in our decisions to which we now refer.

When it appears the meaning of language used in a statute is indefinite, uncertain or ambiguous, the cardinal rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature in enacting it governs when that purpose and intent is ascertainable from the language to be found therein. (*Hunziker v. School District,* 153 Kan. 102, 109 P. 2d 115). Another principle, of almost equal importance, is that when a statute is susceptible of more than one construction it must be given that construction which, when considered in its entirety, gives expression to its intent and purpose (*Shumaker v. Kansas State Labor Dept.,* 154 Kan. 418, 118 P. 2d 550).

Thus in *State, ex rel., v. Moore,* 154 Kan. 193, 117 P. 2d 598, in dealing with the general duty of a court in ascertaining legislative intent we held:

"In construing a statute, the legislative intention is to be determined from a general consideration of the whole act, and effect must be given, if possible, to the entire statute and every part thereof.

"In determining and giving effect to the legislative intention, as expressed in the statute, it is a court's duty, so far as practicable, to reconcile the different provisions so far as to make them consistent, harmonious, and sensible.

"The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted." (Syl. ¶¶ 1, 2, 5.)

With respect to specific matters which may be considered by a court in determining legislative intent our decisions are numerous. In *Motor Equipment Co. v. Winters,* 146 Kan. 127, 69 P. 2d 23, we announced that it was essential to consider statutes in existence when the statutes involved were enacted. In *Ruppenthal v. Maag,* 153 Kan. 588, 591, 113 P. 2d 101, we stated the best means of ascertaining such intent was to fix what the situation was at the time of the enactment of the particular statute in controversy. In *In re Estate of Butler,* 159 Kan. 144, 152 P. 2d 815, we said legislative intent is to be determined by construing language employed in the statute under consideration with reference to the particular subject concerning which the words are used. In *Clark v. Murray,* 141 Kan. 533, 41 P. 2d 1042, we held that when the interpretation of a statute according to the exact and literal import of its words will defeat the manifest purpose of the legislature in its enactment, it should be

construed according to its spirit and reason, disregarding, as far as may be necessary, the strict letter of the law. In *Kelly v. Lassen Hotel Co.,* 161 Kan. 444, 168 P. 2d 527, we decided that the provisions of a statute should be construed together and in their entirety in determining the purpose of the legislature in its enactment. Long ago, in *City of Emporia v. Norton,* 16 Kan. 236, we held that in the determination of legislative intent the court is not limited to mere consideration of words employed, but may properly look to the purpose to be accomplished, the necessity and effect of the statute, under the different constructions permitted by its terms. In *In re Brenner,* 151 Kan. 788, 100 P. 2d 688, we decided that words in a statute must be construed in light of the context and the general purpose of the enactment. And, in *Johnson v. Hensley,* 150 Kan. 96, 102, 90 P. 2d 1088, we said that the legislative history of an involved statute is entitled to consideration as an aid in determining legislative intention.

When the involved statute in its entirety is tested by the foregoing legal principles we are convinced the intent of the legislature in using the word "consumption" as found in G. S. 1945 Supp. 79-3704 (a) was to limit the exemption from payment of the compensating tax to such articles of tangible personal property as were brought into the state by a public utility for use in such manner as to accomplish their direct and immediate consumption in interstate commerce. This conclusion, in our opinion, is justified when consideration is given to: (1) The statute (Laws 1937, ch. 375) in force and effect when the one involved was enacted; (2) the conceded nonliability of public utilities for payment of the tax under the terms of the 1937 statute when property was purchased outside the state and brought into the state by them for purposes of carrying on their interstate business; (3) the force and effect of the decisions of the Supreme Court of the United States in the Gallagher cases; (4) the knowledge of the legislature that by amending the 1937 act a valid compensating tax could be levied on property brought into the state and stored even if it was later used for purposes of interstate commerce; (5) the legislative history pertaining to, and the purpose of, the legislature in enacting the 1945 compensating tax act; (6) the universally accepted canon of statutory construction requiring that a statute be so interpreted, if possible, as to give force and effect to each and all of its provisions, and (7) the fact, which it must be assumed to have known, that by substitution of the word

"use" for "consumption" in the last clause of G. S. 1945 Supp. 79-3704 (a), the legislature would have definitely exempted all property used in interstate commerce, notwithstanding that prior to that use it had become subject to payment of the tax under other provisions of the act by reason of having been temporarily stored within the state. It becomes inescapable, we believe, when, coupled with the indicative considerations to which we have just referred, it appears the statute as finally enacted imposes a compensating tax on the privilege of using, storing or consuming any tangible personal property bought outside and brought within the state and exempts only so much of that property as is brought therein by a railroad or public utility for consumption or movement in interstate commerce. Such a construction gives force and effect to the over-all tax imposed by G. S. 1945 Supp. 79-3703, as well as the exemption granted by G. S. 1945 Supp. 79-3704 (a). To hold otherwise would result in almost if not complete nullification of section 79-3703, give undue weight to section 79-3704 (a), and defeat the general purpose of the compensating tax statute.

The conclusion just announced makes it unnecessary to give consideration to appellant's contention that rule 18 as promulgated and adopted by appellees deprives it of the exemption granted by the terms of G. S. 1945 Supp. 79-3704 (a). Such rule under our decision does not deprive appellant of any exemption to which it is entitled under that section, or any other provisions of the compensating tax act. It is therefore a lawful and valid regulation.

The judgment of the trial court is affirmed.

Hoch, J., not participating.

Parker, J. (dissenting): I concede the question whether plaintiff is liable for payment of the compensating tax on the involved articles of tangible personal property depends upon the interpretation to be placed upon the word "consumption," as used in G. S. 1945 Supp. 79-3704 (a), but I cannot agree, after applying the usual tests for ascertainment of legislative intent, with the conclusion of the majority it was the intent and purpose of the legislature in enacting that section in its present form to limit its application to articles of tangible personal property brought into the state by a public utility for use in such manner as to accomplish their direct and immediate consumption in interstate commerce.

At the very outset, I desire to state I find myself unable to concur in the majority conclusion the compensating tax act imposes a tax on the privilege of using, storing or consuming all articles of tangible personal property bought outside and thereafter brought within the state by a public utility for consumption in interstate commerce. To me, by language which is clear, concise and unambiguous, and permits of no judicial inquiry as to its meaning, notwithstanding the other provisions of the act, G. S. 1945 Supp. 79-3704 (a), is susceptible of but one construction. That is, that the provisions of the act itself do not apply to such property as is consumed in interstate commerce and therefore no tax is ever imposed thereon. Even so, it is nevertheless necessary to determine just what the legislature meant by the phrase "consumption—in interstate commerce." However, once the act is construed as imposing no tax on property brought into the state for "consumption" in interstate commerce, I point out that in the determination of legislative intent in the use of such phrase the rule of statutory construction, requiring that a statute be so construed as to give force and effect to each and all of its provisions, if possible, is entitled to little weight and consideration. By the same token there is involved no question of nullification of the terms of G. S. 1945 Supp. 79-3703, the sole question being what was the intent of the legislature in limiting nontaxable property under the act to that brought into the state for "consumption" in interstate commerce.

The indications of legislative intent responsible for my position will be stated as briefly as possible.

1. From the standpoint of legislative history the fact the present compensating tax act, the primary purpose of which was to permit the imposition of an excise tax on all property brought into the state, was presented to the legislature in preliminary draft taxing all property of public utilities regardless of the purpose for which it was brought into the state, thereafter came out of the tax committee of the Senate as Senate bill No. 290, and was eventually enacted with section 79-3704 (a), in its present form, at a time when the legislature was fully cognizant of the force and effect of the decision in *Southern Pacific v. Gallagher*, 306 U. S. 167, 83 L. Ed. 587, is highly significant.

2. Of equal importance, since we cannot assume the legislature ignored it, is the language to be found in the opinion of *Southern Pacific v. Gallagher*, supra, which, to me, requires a conclusion, that

when used with respect to tangible property as a technical term in interstate commerce, the word is construed and regarded by the Supreme Court of the United States as having application to all property which by reason of its use in interstate commerce is consumed by either immediate or gradual processes. That language reads:

· "All purchases may be said to be dedicated to consumption in the interstate transportation business of appellant. . . .

"We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively, was effective. The interstate movement was complete. The interstate consumption had not begun. . . . " (306 U. S. 173, 177.)

Another indication appears in section 79-3704(a) itself. To be explicit, the very fact the legislature saw fit to omit from its general clause providing, "the provisions of this act shall not apply," the phrase "in respect to the use, storage or consumption of any article of tangible personal property," and instead inserted such phrase in subsequent clauses in supplemental form, is entitled to some weight as evidencing an intention to make the exclusion from imposition of the tax extend to all use, all storage and all consumption of property brought into the state for purposes of interstate commerce. This fact becomes particularly significant when, on examination of the other clauses of the same section, it becomes obvious each has direct application to all use, storage or consumption of property.

Further indicia of intent are to be found in the use of the word "consumption" by the legislature in section 79-3704(a) from the fact that at the time the compensating tax act was under consideration and on the date it was actually enacted the legislature was bound to know: (a) That under well-established and accepted definitions of such word it is commonly construed as having reference to the using up of anything irrespective of whether that use is gradual or immediate; (b) that in the last expression of the Supreme Court of the United States, in Southern Pacific v. Gallagher, supra, that tribunal had definitely indicated purchases of property, similar in kind to that here involved, were not only dedicated to but purchased for consumption in interstate commerce, and (c) that if it had intended the term to have any less import than the unqualified and all-inclusive meaning attributed to it by accepted definitions

and the Supreme Court of the United States in the case mentioned it could positively and definitely have accomplished that result by use of the phrase "immediate consumption," or "direct consumption," or "immediate and direct consumption," in its stead.

Based upon the foregoing considerations, I am convinced the term "consumption" as used in G. S. 1945 Supp. 79-3704(a) should be construed as having reference to all use of property in interstate commerce, irrespective of whether it is to be destroyed by immediate, gradual or ultimate processes. My conclusion would require a reversal of the judgment. I therefore dissent.

BURCH, J., joins in the foregoing dissenting opinion.