No. 42,354

MARTHA MITCHENER and RONALD WAYNE MITCHENER, a minor, by MARTHA MITCHENER, his Legal Guardian, *Appellees,* v. C. L. DANIELS, d/b/a C. L. DANIELS STONE Co., *Appellant.*

(359 P. 2d 872)

Opinion filed March 4, 1961.

*J. A. Herlocker* and *Robert L. Bishop,* both of Winfield, argued the cause, and *Harry O. Janicke,* of Winfield, was with them on the brief for the appellant:

*Marion P. Mathews,* of Winfield, argued the cause, and *Lawrence E. Christenson* and *W. R. Mathews,* both of Winfield, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation case wherein the respondent seeks to reverse a judgment of the district court awarding compensation to the dependents of a deceased workman.

The substantive questions presented are whether there is substantial competent evidence in the record to sustain the trial

court's findings that: (*a*) The respondent (appellant) on the date of the fatal accident was subject to the workmen's compensation act; and (*b*) the decedent contributed his entire earnings to the support of the family, where the claimants (appellees) were only partial dependents.

At the outset we are confronted with a motion to dismiss the appeal by the appellees.

On the 17th day of May, 1960, an award was made by the workmen's compensation commissioner. On the following day the claimants served written demand for payment of all sums due under said award upon the respondent and his attorneys of record in accordance with the provisions of G. S. 1949, 44-512a. The motion recites:

". . . that more than fourteen days expired and respondent failed to make payments under said award and that no appeal was filed within the fourteen-day period; that on June 3, 1960, respondent attempted to perfect this appeal by filing notice of appeal with the Workmen's Compensation Commissioner; that claimants, on the 7th day of June, 1960, and before notice of appeal was received by them, filed an action against the respondent for the collection of the entire award in the District Court of Cowley County, Kansas, Case No. 31297, all pursuant to 44-512a G. S. 1949."

It is the contention of the appellees that pursuant to 44-512a, *supra*, the entire amount of the award became immediately due and payable at the expiration of fourteen days, and the respondent by failing to perfect an appeal within such period of fourteen days, waived his right to appeal; and that the respondent's appeal perfected thereafter and within twenty days from the date of the award pursuant to G. S. 1949, 44-556, was out of time.

The provisions of 44-512a, *supra*, have been before the court in two recent cases, *Redenbaugh v. State Department of Social Welfare*, 187 Kan. 320, 356 P. 2d 794; and *Bentley v. State Department of Social Welfare*, 187 Kan. 340, 356 P. 2d 791. The question raised by the appellees in their motion to dismiss has been answered in the *Bentley* case. After a discussion of the question the court concluded in the following language:

"Under the statute, the employer may appeal at will, but if served with the required notice under section 44-512a, he should pay the compensation to date or make some agreement and bond for the same. If compelled to make such payments, he could not be thought to prejudice his right of appeal." (p. 342.)

The provisions of 44-512a, *supra*, are not construed as a limitation upon the right of appeal granted under 44-556, *supra*. Therefore, the appellees' motion to dismiss is denied.

Lemuel M. Mitchener was employed as a truck driver by the respondent, C. L. Daniels, d/b/a C. L. Daniels Stone Company, who operated an open-type stone quarry near Winfield, Kansas. On the 20th day of August, 1959, while driving a truck owned by the respondent, in and around the quarry, Mitchener sustained personal injuries, concededly arising out of and in the course of his employment, resulting in his death. There is no evidence of an election by the respondent to come under the workmen's compensation act.

On the date of the accident, five people were employed by the respondent in the quarry operations. Four of these worked directly in the quarry and one, Mrs. Hazel Wilt, worked in an office building located on the quarry grounds, consisting of an eighty-acre tract in the country. She drove her own automobile to work and parked it next to the office building. Her work consisted of weighing all materials sold, weighing trucks which drove onto the scales outside the office building, taking orders for material, computing costs and billing customers, keeping payroll records and writing checks, answering the telephone, keeping the books for the business and general office management. Both the examiner and the district court found the work performed by Mrs. Wilt was performed on the premises and was an integral and necessary part of the quarry operations, by reason of which the respondent was found to come under the workmen's compensation act pursuant to the provisions of G. S. 1959 Supp., 44-507.

In conducting the quarry operations a bulldozer was used to skim from two to four feet of dirt from the surface rock. After holes were drilled in the rock some fourteen to sixteen feet, *powder and nitrate were put into the holes and the rock was blasted loose.* The rock was then scooped by a shovel and loaded into the quarry trucks which took the rock to the crusher. At the time of Mitchener's accident he was operating the quarry truck. After the rock was crushed, it was then loaded into another truck and stockpiled. The crusher was located west of the quarry and the small office building was west of the crusher. The evidence as to the distance between the quarry and the office building is inconsistent. Hazel Wilt described it as a couple of blocks while other witnesses testified to a greater distance, some stating more than a quarter of a mile.

The respondent did not deliver any materials to customers. They came to the grounds in trucks to pick it up themselves. The evidence was that Mrs. Wilt had never been to the quarry itself at any

time since she had been employed; that she had no supervision or control over the quarry operations, nor had she ever given the employees any instructions. The instructions to the employees in the quarry came directly from the respondent or, in his absence, from an employee, Jack Bowlby, who was the shovel operator.

The appellant contends there were only four employees working in hazardous operations of the quarry at the time of the accident, and that Hazel Wilt was not one of such employees.

The workmen's compensation act was enacted for the protection of workmen in certain hazardous employments. G. S. 1959 Supp., 44-505, provides in part as follows:

"This act shall apply only to employment in the course of the employer's trade or business *in the following hazardous employments:* . . . mine or quarry, . . . and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, each of which employments *is hereby determined to be especially dangerous,* in which from the nature, conditions or means of prosecution of the work therein, *extraordinary risk to the life and limb of the workmen engaged therein is inherent, necessary, or substantially unavoidable,* and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen . . ." (Emphasis added.)

G. S. 1959 Supp., 44-507, provides in part:

"It is hereby determined that the necessity for this law and the reason for its enactment exists only with regard to employers who employ a considerable number of persons. This act, therefore, shall only apply to employers by whom *five (5) or more workmen are employed within the state of Kansas at the time of the accident:* . . . (Emphasis added.)

It is further provided in the last preceding section that the act shall apply to mines without regard to the number of workmen, employed or the period of time employed. However, by definition in G. S. 1949, 44-508, a "Quarry" is not a mine. On the facts in the instant case the operations of the appellant fall within the definition of a quarry, and the trial court so found.

Our cases hold that persons to be counted as employees, in order to bring their employer within the workmen's compensation act, must be *engaged in* hazardous employment. In the early case of *Udey v. City of Winfield* (1916), 97 Kan. 279, 155 Pac. 43, the deceased workman had been employed by the city in the operation of an electric light plant and waterworks system. He was killed in the course of his employment, and the requisite number of employees required by the statute then in force could not be met without including the clerical employees in the office of the city

clerk. The statute then in force did not differ materially from the act as it now appears. In holding that the act did not include clerical employees not engaged in hazardous operations the court said:

"It is not within the letter or spirit of this statute that clerical employees like the clerk and stenographer in the city clerk's office should be included within the list of those engaged in the hazardous enterprise of operating an electric-light and waterworks system." (p. 282.)

In *Stover v. Davis*, 110 Kan. 808, 205 Pac. 605, an effort was made to count a cab driver who transported workmen to and from the job site twice a day, where a driller suffered an injury which resulted in his death in the course of his employment, and the court in holding the cab driver was not to be counted as an employee within the act, said:

". . . Workmen affected by the act are workmen exposed to the peculiar hazards of the locality . . . and in ascertaining the number of workmen necessary to bring an employer's business within the statute, *none are to be counted except those exposed to the hazards of the locality. . .*" (p. 812.) (Emphasis added.)

The most recent case on the point is *Thorp v. Victory Cab Co.*, 172 Kan. 384, 240 P. 2d 128. There an employer operated a taxicab company and in conjunction therewith maintained a repair shop, where it repaired its taxicabs and other vehicles belonging to the business. It also repaired cars of persons to whom the company was liable in damages. The repair shop, a hazardous employment, was covered by the workmen's compensation act if it employed five or more workmen. A workman in the repair shop was injured, and in remanding the case to the district court for an additional finding the court said:

"The findings of the commissioner disclose he erroneously believed office and administrative employees of the taxicab business could be counted in determining whether five or more workmen were employed. Neither clerical employees of the taxicab company nor mere administrative officers of the latter, who do not have supervision or control over the work in the repair shop, may be counted in determining whether five persons are employed in the hazardous work in the repair shop . . ." (pp. 389, 390.)

The foregoing cases, to which we adhere, are relied upon by the appellant to show that Hazel Wilt was not one of the employees engaged in hazardous employment. The trial court, however, found to the contrary.

The jurisdiction of the Supreme Court on appeal in a workmen's

compensation case is specifically limited to the determination of questions of law. As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in so doing, all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears such finding is conclusive and will not be disturbed on review. (*Madison v. Key Work Clothes,* 182 Kan. 186, 318 P. 2d 991; *Kafka v. Edwards,* 182 Kan. 568, 322 P. 2d 785; and cases cited therein.)

The court does not review the record to ascertain whether it contains evidence to support a contrary finding, but only whether there is substantial competent evidence to support the finding made by the district court. (*Angleton v. Foster Wheeler Construction Co.,* 177 Kan. 134, 276 P. 2d 325; *Wilson v. Santa Fe Trail Transportation Co.,* 185 Kan. 725, 347 P. 2d 235; and *Rorabaugh v. General Mills,* 187 Kan. 363, 356 P. 2d 796.)

On the record presented we cannot say as a matter of law Hazel Wilt was not exposed to the hazards of the locality, despite the fact her work was principally clerical in nature. The quarrying operations were conducted in a rural locality and confined to an eighty-acre tract of land where *explosives* were regularly used and *blasting operations* were regularly conducted. We cannot escape the admonition in 44-505, *supra,* which says "all employments wherein a process requiring the use of any dangerous explosive . . . is carried on, each of which employments is hereby determined to be especially dangerous."

The case would not seem difficult had Hazel Wilt been the party injured by a flying rock hurled from the site of blasting operations, or from an explosion at or near the office building caused by the inadvertent act of a smoking customer igniting explosive materials being transported to the premises, or temporarily placed at the office building in the course of delivery, or had she been injured by any other act that might reasonably be foreseeable under the circumstances.

The record presents substantial competent evidence to sustain the trial court's finding that the appellees were partial dependents of the decedent, and that he used all of his earnings for the support of the family.

The appellees are the decedent's widow, Martha Mitchener, and the decedent's minor son, Ronald Wayne Mitchener, for whom his

mother, Martha Mitchener, was appointed guardian. Both the decedent and Martha Mitchener were employed and for the past several years, their earnings had been commingled and deposited in a joint bank account. Family bills were paid either by cash, or from checks drawn on the joint account. The trial court found Martha Mitchener and her son, Ronald Mitchener, were partial dependents of the decedent, but that he used all of his earnings "for the support of Martha Mitchener, his widow, Ronald Wayne Mitchener, his minor son, and deceased Lemuel Maurice Mitchener." Martha Mitchener testified:

"Q. It would be fair, or a correct statement to say that all of his earnings went towards his support and the support of you and your minor son?

"A. That is right."

Other testimony can be reconciled with the foregoing question and answer.

Under these circumstances the method set forth in our cases to arrive at the amount of compensation due in cases of partial dependents, where total earnings are contributed to family support, has been properly applied. (*Kelly v. Lassen Hotel Co.*, 161 Kan. 444, 168 P. 2d 527; *Peterson v. Fairmont Food Co.*, 179 Kan. 799, 298 P. 2d 223 [opinion *modifying* opinion and denying rehearing 180 Kan. 271, 302 P. 2d 1001]; and *Conklin v. Topeka Wholesale Grocery Co.*, 183 Kan. 458, 327 P. 2d 860.)

The average weekly wage of the decedent was found to be $67.86 and total compensation was awarded in the sum of $10,586.16, one-half payable to the widow, and one-half payable to the widow as guardian for the minor son. The respondent (appellant) was also ordered to pay the funeral bill in the amount of $600 and costs.

The judgment of the lower court is affirmed.