[No. 37414. En Banc. March 18, 1965.]

CLYDE A. BUSH et al., *Respondents*, v. TAX COMMISSION OF THE STATE OF WASHINGTON, *Appellant.*\*

\*Reported in 400 P. (2d) 315.

*The Attorney General, Lloyd W. Peterson, Henry W. Wager,* and *Gary Sullivan, Assistants,* for appellant.

*John R. Kramer,* for respondents.

HILL, J.—The plaintiffs, Clyde A. Bush and E. Vera Bush, his wife, purchased a charter fishing boat, the *Susan.* No sales tax was paid. The state assessed and collected $940 as a compensating (use) tax. The plaintiffs commenced this action against the state to recover the tax. A stipulation containing an agreed statement of facts was filed, and both parties moved for summary judgment. The trial court granted the plaintiffs' motion, directing the return of the tax with interest. The state appeals.

It is conceded that the "use" tax imposed by virtue of RCW 82.12.020[1] is applicable, unless the plaintiffs-respondents establish that their use was within an express statutory exemption, *i.e.,* RCW 82.12.030(4),[2] or unless the imposition of the tax would violate constitutional guarantees.

It was stipulated that: The *Susan* was constructed in the state of Washington for Eugene Parr, and "is 50 feet in length and 15 feet in breadth and powered by a 165 horsepower grey [Gray] marine diesel engine." At all times since construction, she has been used as a charter fishing boat operating out of Westport, Washington. During the fishing seasons of 1961 and 1962, she made 121 fishing trips, all of which were beyond the 3-mile limit, but fishing was done

[1]"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state as a consumer any article of tangible personal property purchased at retail, or acquired by lease, gift, or bailment, or extracted or produced or manufactured by the person so using the same. . . ." RCW 82.12.020.

[2]The provisions of this chapter shall not apply:

" . . .

"(4) In respect to the use of any airplane, locomotive, railroad car, or watercraft used primarily in conducting interstate or foreign commerce by transporting therein or therewith property and persons for hire or used primarily in commercial deep sea fishing operations outside the territorial waters of the state, . . . " RCW 82.12.030(4)

both within and without that limit. During these fishing seasons, the *Susan* carried 1,400 persons; and all were carried for the purpose of sport fishing upon the ocean, primarily for salmon, but also for other fish. The catch averaged 2.6 fish per person for the 1962 season; the smallest catch on any trip was 4 and the largest 69.

The trial court found that the *Susan* was engaged in foreign commerce and, therefore, exempt from the use tax imposed by RCW 82.12.020.

The trial court relied in large part on *Booth Fisheries Corp. v. Case* (1935), 182 Wash. 392, 47 P. (2d) 834. We do not believe that that case has any direct bearing on the issues now before us. We there held that fish caught beyond the 3-mile limit were imports and, as such, were not subject to the "catch" tax which has to be paid on fish caught within those limits. Assuming, as held in the *Booth* case, that a tax on fish caught beyond the 3-mile limit would be a tax on imports brought into the United States and, hence, prohibited by Art. 1, § 10, of the Constitution of the United States,[3] it does not necessarily follow that a charter sport fishing boat which goes beyond the 3-mile limit on fishing forays and returns without touching at any foreign port would be also engaged in foreign commerce. The "commerce" clause in the Constitution of the United States (Art. 1, § 8) is not a prohibition against taxation directed to the states, as is the "export-import" clause, but is a grant of power to the congress[4] to tax and regulate.

---

[3]" . . .

"No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the congress. . . ." U. S. Const. Art. 1, § 10.

[4]"The congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defence and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States;

" . . .

"To regulate commerce with foreign nations, and among the several states, and with the Indian tribes; . . ." U. S. Const. Art. 1, § 8.

The distinctions between the import-export clause and the commerce clause are rather clearly enunciated in *Richfield Oil Corp. v. State Bd. of Equalization* (1946), 329 U. S. 69, 91 L. Ed. 80, 67 S. Ct. 156, and need not be repeated here. It was there recognized that states can tax foreign commerce for certain purposes and under certain conditions and limitations.

■ The "use" tax, with which we are here concerned, in no way limits or regulates, or attempts to limit or regulate foreign commerce. Its direct operation, intended and actual, is wholly local—a tax on "use" within the state of Washington. If the enforcement of the tax affects foreign commerce, the result is purely incidental, indirect, and beyond the purposes of the legislation. It is well within the taxing power of the state. See *Bayside Fish Flour Co. v. Gentry* (1935), 297 U. S. 422, 80 L. Ed. 772, 56 S. Ct. 513.

We have concluded that, even if this tax in any way affects foreign commerce (and we do not believe it does), it is, nevertheless, such a tax as can be levied by the state within the conditions and limitations discussed in *Richfield Oil Corp. v. State Bd. of Equalization, supra.*

However, this conclusion does not meet the principal argument made by the owners of the *Susan*. They urge that even if the tax is a valid tax, so far as its effect on foreign commerce is concerned, the legislature expressly excluded the *Susan* from the operation of the tax, if it was "used primarily in conducting . . . foreign commerce by transporting therein or therewith property and persons for hire," or if it was "used primarily in commercial deep sea fishing operations outside the territorial waters of the state." (RCW 82.12.030 (4), see note 2.)

We shall consider the latter claim of exemption first.

■ The owners of the *Susan* were not actually engaged in fishing at all; instead they operated a boat which made it possible for others to engage in fishing for sport. Our conclusion that this is not commercial deep sea fishing was somewhat picturesquely expressed by Judge Meaney of the U. S. District Court of New Jersey, when he pointed out that a charter boat for sport fishing, such as the *Susan*,

". . . was actually used, not for commercial fishing but rather for carrying enthusiastic amateur piscators to available fishing grounds off the Jersey Coast, outside Manasquan Inlet. . . ." *Petition of Bogan* (1952), 103 F. Supp. 755, 759.

Judge Meaney was speaking of the *Paramount III* which made "daily trips as a party fishing boat from her berth on the Manasquan River," going about 8 or 10 miles out into the Atlantic Ocean.

The owners of the *Susan* were in no sense commercial fishermen, and no one questions the amateur standing of her passengers. We are satisfied that the contention by the state that the *Susan* was not engaged primarily, or at all, in commercial deep sea fishing is correct.

We come finally to the other claimed exception, *i.e.*, that the *Susan* was engaged in foreign commerce.

■ Under the definition of "Foreign Commerce" adopted by the State Tax Commission,[5] a contact with a foreign country, either at origin or destination, is involved, which was totally lacking in the *Susan's* charter fishing trips beyond the 3-mile limit.

The owners of the *Susan* challenge the definition of the "Tax Commission as not being within the contemplation of the legislature when it granted exemption from the "sales" and "use" taxes to "watercraft used primarily in conducting interstate or foreign commerce."

We find it very difficult to believe that the legislature ever contemplated that charter sport fishing boats were going to be considered as engaging primarily in foreign commerce merely because on each trip they went beyond the 3-mile limit.

---

[5]The State Tax Commission has defined "Foreign Commerce" as follows:

"Foreign commerce: Means that commerce, commercial intercourse, traffic or trade which involves the purchase, sale or exchange of property and its transportation, or the transportation of persons, or the transportation of communications or electrical energy, from a state or territory of the United States to a foreign country, or from a foreign country to a state or territory of the United States. . . ." (Rule 193.)

The definition adopted by the Tax Commission finds support in Black's Law Dictionary (4th ed. 1951) at page 337, where "Foreign commerce" is defined as "Commerce or trade between the United States and foreign countries."

■ Conceding that there are broader definitions, we are presently concerned with a claim for exemption from a valid tax; and the state is entitled to frame its own definition of foreign commerce for the purpose of determining what sales or uses it intends to exempt from its "sales" and "use" taxes. We are satisfied that the Tax Commission's definition is compatible with the legislative intention.

We conclude that, as a matter of law, the *Susan* was not engaged in foreign commerce and, hence, did not come under the foreign commerce exemption.

Coming within neither of the statutory exemptions, the tax was properly assessed and collected. The judgment directing a refund is reversed with directions to dismiss the action.

ROSELLINI, C. J., DONWORTH, WEAVER, OTT, HUNTER, HAMILTON, and HALE, JJ., and MACIVER, J. Pro Tem., concur.