No. 47,724

United Parcel Service, Inc., *Appellee*, v. Harold A. Armold, Director of Taxation for the Department of Revenue of the State of Kansas, *Appellant*.

(542 P. 2d 694)

Opinion filed November 8, 1975.

*William N. Lacy*, of Topeka, argued the cause, and *William L. Harris, Jr.*, also of Topeka, was with him on the brief for the appellant.

*Leonard Singer*, of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, argued the cause, and *Gerald J. Letourneau*, of Colmery, McClure, Funk, Letourneau & Wilkinson, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: The Director of Taxation for the Department of Revenue appeals from a judgment of the district court ordering the

Department to refund the total amount of compensating use tax paid by United Parcel Service, Inc., on certain of its vehicles brought into the state. The sole issue for our determination is whether the district court erred in finding the vehicles in question were used for "movement in interstate commerce" within the meaning of K. S. A. 79-3704 (a). The taxing authority will be referred to as the Department, and the taxpayer as UPS.

The facts, as stipulated by the parties, are summarized as follows: UPS, an Ohio corporation authorized to do business in the State of Kansas, is a motor carrier engaged in the pickup and delivery of parcels in interstate commerce. Despite the fact it is an interstate carrier, UPS employs a substantial number of men and women within the state. UPS moves the parcels by van, transport, and sometimes through connections with other interstate carriers, such as railroads. In conjunction with its Kansas business, UPS is taxed by the state in terms of personal property, income, and other matters. This case involves no issues regarding those taxes paid on a regular basis by UPS.

Operations of UPS in the State of Kansas are pursuant to Certificates of Public Convenience and Necessity issued by the Interstate Commerce Commission. These certificates are supplemented by an order of the Kansas Corporation Commission granting an interstate common carrier license to UPS, which provides in relevant part:

"This grant of authority shall not authorize the applicant to perform intrastate service between any two points within the state of Kansas, except when such traffic shall be validly moving from, to or through another state as part of a bona fide continuous interstate movement in good faith and not for the purpose of evading intrastate regulation."

UPS has not applied for, nor does it hold, any rights granted by the Kansas Corporation Commission or otherwise to operate in intrastate commerce in Kansas.

Pursuant to the authorities herein mentioned, UPS can pick up parcels in Kansas which are being shipped to a point outside Kansas, but cannot pick up a parcel in Kansas which is destined for final delivery elsewhere in Kansas. Conversely, UPS can deliver parcels in Kansas if the shipment originated in a state other than Kansas, but cannot deliver parcels in Kansas which are shipped from a point in Kansas. The Department concedes that the parcels carried by UPS are moving in interstate commerce.

Shortly after UPS opened its Kansas City, Kansas, facility it

purchased and brought into the state certain rolling stock consisting of vans and tractor-trailers which are used to move the parcels. Without reviewing the situation with its attorney, UPS paid a compensating use tax on the new fleet of vehicles in the amount of $24,434.49.

On June 16, 1972, UPS filed a claim with the Department for a full refund of the compensating use tax it had paid. The secretary of revenue denied UPS' claim for a refund, stating:

"The payment of $24,434.49 as consumers' compensating use tax was made on rolling stock admittedly not consumed in interstate commerce. The fact that this stock carrier's property which is moving in interstate commerce does not, under the Kansas statutes, exempt the purchase of said vehicle from Kansas tax."

The claim was denied after a hearing before the State Board of Tax Appeals. The matter was then appealed to the district court, resulting in an order to refund the tax.

Under the scheme of revenue legislation, the sales tax was intended to levy a tax upon the privilege of selling tangible personal property at retail within a state, or the rendering or furnishing of certain services therein. A problem arose, however, with the realization that property could be purchased outside the state and subsequently brought into the state, thereby avoiding the general sales tax. To rectify this situation, numerous state legislatures enacted compensating tax laws to impose a tax on the sales of property purchased beyond their borders which otherwise would be subject to the sales tax.

The original Kansas Compensating Tax law levied a tax for the privilege of "using" within the state articles of tangible personal property purchased after May 30, 1937. (G. S. 1937 Supp. 79-3703.) The act was construed as not being applicable to property brought into this state for use by a railroad or public utility engaged in carrying on an interstate business, based on the assumption it would constitute an unconstitutional burden on interstate commerce. (*Natural Gas Pipeline Co. v. Commission of Revenue & Taxation*, 163 Kan. 458, 183 P. 2d 234.) Later, the United States Supreme Court relaxed its application of the commerce clause to state excise tax laws. In the companion cases of *Southern Pac. Co. v. Gallagher*, 306 U. S. 167, 83 L. Ed. 586, 59 S. Ct. 389, and *Pacific Tel. Co. v. Gallagher*, 306 U. S. 182, 83 L. Ed. 595, 59 S. Ct. 396, the court upheld a state tax on the storage and use of property bought outside the state by a railroad company and a public utility on the

theory the storage of property within the state was an event occurring after actual movement in interstate commerce had ceased and prior to the use or consumption of such property in interstate commerce. The opinions specifically noted that rolling stock was not involved. ˙

As a result of this development, the 1945 Kansas legislature amended the law to reflect the change made by the *Gallagher* opinions. (G. S. 1947 Supp. 79-3701, *et seq.*) The pertinent provisions now appear as K. S. A. 79-3703 and 79-3704 (*a*). K. S. A. 79-3703 provides:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using, storing, or consuming within this state any article of tangible personal property. Such tax shall be levied and collected in an amount equal to the consideration paid by the taxpayer multiplied by the rate of three percent (3%). All property purchased or leased within or without this state and subsequently used, stored or consumed in this state shall be subject to the compensating tax if the same property or transaction would have been subject to the Kansas retailers' sales tax had the transaction been wholly within this state."

K. S. A. 79-3704 (*a*) provides:

"The provisions of this act shall not apply:

"(*a*) In respect to the use, storage or consumption of any article of tangible personal property brought into the state of Kansas by a nonresident who is within the state for not to exceed sixty (60) days for his or her use or enjoyment while within the state; or by a railroad or public utility for consumption or movement in interstate commerce;"

We have had occasion in the past to construe this exemption, but we limited our opinion to a consideration of the term "consumption." (*Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* supra.) In the instant case, we are asked to construe the alternative basis for exemption from the use tax under 79-3704 (*a*); *i. e.,* "movement in interstate commerce."

By further consideration of the various contentions and arguments of the parties we can better understand the nature of the issue. The Department has consistently maintained that the vehicles in question were not brought into the state for direct and immediate movement in interstate commerce, and for that reason UPS cannot take advantage of the exemption afforded by 79-3704 (*a*). The Department's argument can be divided into three parts. First, it contends it has the constitutional power to tax these vehicles by virtue of their intrastate operations. Second, it argues that the vehicles do not move in interstate commerce since

they do not cross state lines. Third, it contends the exemption should be read to require "direct and immediate movement" in interstate commerce.

On the other hand, UPS points out that it has never challenged the constitutionality of a use tax on its vehicles, perhaps in recognition of the myriad of federal and state decisions affirming the power of the states to tax certain aspects of interstate operation when there is a sufficient nexus with the taxing state. (*Washington Tel. Co. v. State*, 77 Wash. 2d 923, 468 P. 2d 687 [1970]; *HC & D v. Yamane*, 48 Hawaii 486, 405 P. 2d 382 [1965]; *Bush v. Tax Commission*, 65 Wash. 2d 895, 400 P. 2d 315 [1965]; *Shannon v. Streckfus Steamers, Inc.*, 279 Ky. 649, 131 S. W. 2d 833 [1939]; *Interstate Pipe Line Co. v. Stone*, 337 U. S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264.) Instead, UPS argues that even assuming the State of Kansas has the power to tax its rolling stock, the legislature specifically exempted rolling stock from the tax. UPS sees the problem as one of statutory construction as to whether its rolling stock was brought into the state for "movement in interstate commerce," within the meaning of 79-3704 (*a*).

Resolution of this issue necessitates a closer examination of the applicable statutory provisions and administrative regulations. Although the legislature has provided the statutory guidelines for imposition of the compensating use tax, it expressly empowered the director of revenue, subject to the approval of the Board of Tax Appeals, to make such rules and regulations as he deems necessary to carry out the provisions and intent of the act. (K. S. A. 79-3707.) Pursuant to this authority, the director of revenue promulgated the following regulation relative to the application of the compensating use tax to motor carriers engaging in interstate commerce:

"92-20-18. Motor carriers—interstate commerce. Motor carriers authorized by the interstate commerce commission as common carriers and engaged in the transportation of persons or property shall be deemed to be a public utility within the meaning of the term 'public utility' as used in section 79-3704 (*a*) of the act.

. . . . . . . . . . . . . . .

"All tangible personal property purchased out of the state and brought into the state of Kansas for use, storage, or consumption by *common* carriers is subject to the tax in the same manner as is tangible personal property brought into the state by other firms, persons, or corporations, except as exempted herein.

"Rolling stock including buses and trailers, purchased by *common* carriers authorized to engage in interstate transportation by the interstate commerce

commission, which tangible personal property is brought into the state of Kansas for movement *directly and immediately* in interstate commerce, is exempt.

"All repair parts and replacement material or parts brought into and stored in the state of Kansas which become a part of interstate commerce rolling stock are exempt."

Although we recognize that administrative regulations made by those charged with enforcement of statutory enactments are not controlling, they are nonetheless entitled to great weight unless they are repugnant to the statutory provisions or are clearly erroneous. (*Boeing Co. v. Kansas Employment Security Board of Review*, 193 Kan. 287, 392 P. 2d 904; *Coca-Cola Co. v. State Bd. of Equalization*, 25 C. 2d 918, 156 P. 2d 1 [1945].)

The Department concedes that UPS is a common carrier within the meaning of K. A. R. 92-20-18, so it shall be deemed a "public utility" for the purposes of 79-3704 (*a*). Both parties agree the vans and tractor-trailers purchased by UPS are rolling stock. In view of this, the issue, as hereinbefore stated, is whether the rolling stock was brought into Kansas for movement in interstate commerce.

In interpreting a statutory provision which is susceptible of more than one construction it must be given that construction which, when considered in its entirety, gives expression to its intent and purpose. (*Natural Gas Pipeline Co. v. Commission of Revenue & Taxation*, supra.) The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted. (*State, ex rel., v. Moore*, 154 Kan. 193, 117 P. 2d 598.)

Although the Department relies upon our opinion in *Natural Gas Pipeline* for support of its argument in this case, we limited our decision in that case to a discussion of the term "consumption," as used in K. S. A. 79-3704 (*a*). The *Natural Gas Pipeline* case involved an attempt of the Department to place a use tax on repair and replacement parts brought into the state for use on an interstate pipeline system. The plaintiff therein maintained it was entitled to an exemption because the property brought into the state was "consumed" in interstate commerce. In denying the exemption we traced the history of the compensating tax law and concluded the intent of the legislature in using the word "consumption" was to limit the exemption to such property brought into the state by a public utility or railroad for use in such a manner as to accomplish its "direct and immediate" consumption in interstate commerce.

*Natural Gas Pipeline* is distinguishable on the basis of its facts; however, we are left with the question of whether the movement in interstate commerce must also be direct and immediate. Although we did not consider this issue in *Natural Gas Pipeline*, we see no reason for not applying the requirement to both the consumption and movement in interstate commerce. This is in accord with the recent addition of the words "directly and immediately" in K. A. R. 92-20-18 to qualify "movement in interstate commerce." According to the facts stipulated by the parties, shortly after UPS opened its Kansas facility it purchased and brought into the state rolling stock consisting of vans and tractor-trailers. These items were then used during the course of UPS' normal operations to move parcels to another point in the state. This is not the same situation as in *Natural Gas Pipeline*, where the items were temporarily held, stored, or warehoused until such time as the property could be put to later use. The district court in the instant case specifically found that the completed transportation units were ready for immediate use in the same form. The Department makes no claim that the rolling stock was stored or in any other manner held back from the normal course of operations. Under these circumstances we have no hesitation in holding that such use would be "direct and immediate."

Our research has failed to reveal any cases construing "movement in interstate commerce" with respect to a compensating use tax exemption. Kansas appears to be the only state using the phrase in connection with a compensating use tax exemption. Despite the scarcity of case law on this subject we feel the meaning of the word "movement" is clear when considered in the context of the entire act. We agree with the Department that "movement in interstate commerce" requires the property to actually move and does not refer to those items of tangible personal property which are stationary. This interpretation is consistent with the Department's regulations which construe the exemption to apply to rolling stock, and repair and replacement parts which become a part of rolling stock. We have no doubt the legislature had rolling stock in mind when it used the word "movement" in the exemption provision. However, we cannot concur with the Department's contention that the rolling stock must actually cross state boundary lines to be moving in interstate commerce. The trucks in question were engaged exclusively in interstate commerce although they operated solely within the state. As previously stated, the Kansas Corporation Commission's license to UPS expressly restricted its operations to interstate move-

ment and prohibited UPS from performing intrastate service. For many years federal and state courts have recognized that a carrier, although operating a line wholly within a state, is nevertheless engaged in interstate commerce where the carrier is itself transporting other property or persons which has or will cross state boundaries. (15 Am. Jur. 2d, Commerce, § 48, p. 688.)

The earliest expression of this principle can be found in the case of *The Daniel Ball*, 10 Wall, 557, 77 U. S. 557, 19 L. Ed. 999, wherein the United States Supreme Court held that a carrier moving parcels shipped in interstate commerce was engaged in interstate commerce despite the fact the ship only moved between points within the state and only a portion of its cargo was destined for or came from other states. In concluding that the vessel was subject to the federal regulation of interstate commerce, the court stated:

". . . [I]nasmuch as her [the vessel's] agency in the transportation was entirely within the limits of the State . . . it is contended that she was engaged entirely in domestic commerce. But this conclusion does not follow. So far as she was employed in transporting goods destined for other States, or goods brought from without the limits of Michigan and destined to places within that State, she was engaged in commerce between the States, and however limited that commerce may have been, she was, so far as it went, subject to the legislation of Congress. . . ." (p. 565.)

Likewise, in the case of *Spector Motor Service v. O'Connor*, 340 U. S. 602, 95 L. Ed. 573, 71 S. Ct. 508, the court held that intrastate operations of the petitioner's pickup trucks were nonetheless part of the interstate transportation of the freight in spite of the fact the pickup trucks operated entirely within the state.

To the same effect is the court's decision in *United States v. Yellow Cab Co.*, 332 U. S. 218, 91 L. Ed. 2010, 67 S. Ct. 1560, wherein the court said:

". . . When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character. *The Daniel Ball*, 10 Wall. 557, 565. That portion must be viewed in its relation to the entire journey rather than in isolation. So viewed, it is an integral step in the interstate movement." (pp. 228, 229.)

For other cases supporting the foregoing rule see: *United States v. Capital Transit Co.*, 338 U. S. 286, 94 L. Ed. 93, 70 S. Ct. 115; *United States v. Union Stock Yard*, 226 U. S. 286, 57 L. Ed. 226, 33 S. Ct. 83; *Martinez v. Phillips Petroleum Company*, 283 F. Supp. 514 (D. C. Idaho 1968); *Kach v. Monessen Southwestern Ry. Co.*, 151 F. 2d 400 (3d Cir. 1945); *Washington Tel. Co. v. State*, supra.

The Department argues that none of these cases are in point for the reason they all involve the right of the government to regulate aspects of interstate commerce as opposed to the right to levy a compensating tax on tangible personal property which has a local situs within the state but does carry parcels moving in the stream of interstate commerce. We recognize these cases on the whole dealt with the question of whether a carrier was engaged in interstate commerce so as to be subject to governmental regulation, but we do not believe this distinction is of any significance for purposes of construing the exemption provisions of our compensating use tax. We must assume the legislature was aware of the status of the law when it used the phrase "movement in interstate commerce", and intended it to have a meaning consistent with the interpretation given by the cases cited. Accordingly, we hold the vans and tractor-trailers used by UPS solely within the state to transport parcels traveling in interstate commerce were brought into the state for movement in interstate commerce, so as to fall within the exemption provision of K. S. A. 79-3704 (a) of the Kansas Compensating Tax law.

The judgment of the district court is affirmed.

MILLER, J., not participating.