(693 P.2d 1205)
No. 56,581

STATE OF KANSAS, *Appellee,* v. ROBERT G. UNDERWOOD, *Appellant.*

Opinion filed January 17, 1985.

*Michael E. Riling* and *Wesley M. Norwood,* of Riling, Norwood, Burkhead & Fairchild, Chartered, of Lawrence, for the appellant.

*Margaret Lindeberg-Johnson,* assistant district attorney, *Jerry L. Harper,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge Assigned; and FREDERICK WOLESLAGEL, District Judge Retired, Assigned.

WOLESLAGEL, J.: The question presented in this case is whether multiple convictions for traffic offenses arising out of one incident are to be considered as separate convictions or only one conviction for purposes of the Kansas Habitual Traffic Violators Act, K.S.A. 8-284 *et seq.*

The critical portion of the act is K.S.A. 8-285, which provides in part:

"The term 'habitual violator' means any resident or nonresident person who, within the immediately preceding five years, has been convicted in this or any other state:

"(a) Three or more times of:

. . . .

"(2) Driving while under the influence of alcohol or drugs, as prohibited by K.S.A. 8-1567 and amendments thereto, or as prohibited by an ordinance of any city in this state or by any law of another state, which ordinance or law declares to be unlawful the acts prohibited by that statute;

"(3) Driving while the privilege to operate a motor vehicle on the public highways of this state has been canceled, suspended or revoked, as prohibited by K.S.A. 8-262 or as prohibited by any ordinance of any city in this state or any law of another state which is in substantial conformity with that statute;

. . . .

"(b) Three or more times, either singly or in combination, of any of the offenses enumerated in subsection (a) of this section."

Robert G. Underwood (defendant-appellant) was held by the trial court to be a habitual violator. The bases for this holding were:

1. On January 27, 1982, he was convicted of driving while intoxicated on December 4, 1981.

2. On May 6, 1983, he was convicted of two offenses, driving while intoxicated and driving while his license was suspended, which occurred simultaneously on August 25, 1982.

The two offenses are admittedly included in the eight offenses listed in K.S.A. 8-285(a) as ones that will support an action under the habitual violator statute.

The action was not under K.S.A. 8-285(a), which involves a conviction of the same offense "[t]hree or more times." Rather, it was under K.S.A. 8-285(b), which requires a conviction "[t]hree or more times, either singly or in combination, of any of the offenses enumerated in subsection (a) of this section." Our problem is what should be made of this language.

The May 6, 1983 determination was a single judgment of two convictions. But is the phrase "either singly or in combination" to be read as meaning this was two qualifying convictions for purposes of the Habitual Traffic Violators Act, even though they were decreed almost simultaneously? The State urges this construction. That would be correct if "in combination" is read as referring to convictions.

Underwood, however, claims the three convictions must be sequential, arising out of three different incidents. He says the phrase "either singly or in combination" refers to the underlying offenses. This is a supportable position since K.S.A. 8-285(a) is devoted entirely to one who is charged with convictions of repeated violations of the identical offense. K.S.A. 8-285(b) speaks of something different: convictions of repeated violations, but of *any* of the offenses. Thus, there may be a mixture of the offenses only under subsection (b) — a "combination" of the offenses. Considering only the language of K.S.A. 8-285, one construction seems about as reasonable as its opposite. The result is that the language is ambiguous.

Faced with ambiguity, we are authorized, and perhaps even directed, to look to the intent and purpose of the entire statute as an aid in deciding what court action should be given to the ambiguous part. *Wachholz v. Wachholz,* 4 Kan. App. 2d 161, 162-63, 603 P.2d 647 (1979), following *United Parcel Service, Inc. v. Armold,* 218 Kan. 102, Syl. ¶2, 542 P.2d 694 (1975). See also *State v. Luginbill,* 223 Kan. 15, 19, 574 P.2d 140 (1977).

K.S.A. 8-284 states what the legislature intended to accomplish by this act:

"It is hereby declared to be the public policy of the state of Kansas:

"(a) To *provide maximum safety* for all persons who travel or otherwise use the public highways of the state;

"(b) To *deny the privilege* of operating motor vehicles on such highways *to persons who* by their conduct, attitude and *record have demonstrated their indifference to the safety and welfare of others and* their *disrespect for the laws* of this state, the orders of its courts and the statutorily required acts of its administrative agencies; and

"(c) To *discourage repetition of criminal acts* by individuals against the peace and dignity of this state and its political subdivisions and to *impose increased and added deprivation of the privilege* to operate motor vehicles upon *habitual violators* who have been *convicted repeatedly* of violations of traffic laws." Emphasis supplied.

The State's construction of the statute seems more likely to "provide maximum safety." It leads, however, to results not reasonably intended. A driver, faultless for many years, could be deemed a "habitual" violator when convicted of driving while intoxicated, failure to renew his liability policy, and failure to stop at the scene of a scraping accident — all within two city blocks and five minutes of time.

Does such an incident produce a "record" which demonstrates the driver's "indifference to the safety and welfare of others," or a "disrespect for the laws"? Perhaps so, but whatever the answer, the incident does not qualify as a "repetition of criminal acts." The violator would receive increased and added deprivation of privileges although his violations were not "habitual" as that term is generally understood. He would be "convicted repeatedly," but, presumably all within a few minutes — hardly what the phrase is understood to mean.

The statute is not denominated as either criminal or civil, but no fine or confinement is authorized except that to drive while adjudged a habitual violator is a class E felony. K.S.A. 8-287. The State shows that the statute has been declared civil in nature. *State v. Boos*, 232 Kan. 864, 659 P.2d 224 (1983). It contends this means that Underwood's sequential relation construction is not appropriate. The premise is firm; the conclusion debatable.

The statute has been construed in our appellate courts on three occasions. The first was *State v. Skeen*, 3 Kan. App. 2d 231, 592 P.2d 150 (1979). Neither civil nor criminal nature nor sequential relationship was addressed. The next appearance was in *State v.*

*Wood,* 231 Kan. 699, 647 P.2d 1327 (1982). Strict versus liberal construction was argued by the parties, but was not a consideration in the decision which related solely to whether convictions of certain city ordinances qualified as underlying convictions. The offenses in that case were so separate in time that we would assume the convictions also were. The statute is not classified as criminal, but in referring to the penalty of loss of driving privileges for a period of at least three years, the opinion terms this a "major sanction." 231 Kan. at 702. Sequential relationship was not in issue.

Finally, *State v. Boos,* 232 Kan. 864, noted the "quasi-criminal language used" in the statute, but found that not to be an adequate criterion to hold the statute criminal rather than civil. 232 Kan. at 870. The underlying offenses and convictions were separate in time. Sequential relationship, once again, is not mentioned. We find no support in that case for the State's argument that since the statute is civil the sequential relationship requirement is inappropriate.

When faced with lack of clarity in a statute, it is appropriate for a court to check the legislative history. *Wachholz,* 4 Kan. App. at 163; *Luginbill,* 223 Kan. at 19. This enactment originated as Senate Bill 539 in 1972. The only relevant history we find is in the Minutes of the Senate Judiciary Committee meeting on February 16 when this bill and four others were being considered. Only two witnesses addressed the bill specifically: Mr. Laudan of Ranger Insurance Company, and Senator Dearth, who commented only that he supported it and that "six states already have such a law."

Mr. Laudan distributed records of sixteen drivers who he said had misrepresented their records to obtain insurance from his company. The number of violations shown varied from five to twenty-five, mostly fifteen or more. He suggested the members should review the records "to illustrate the kind of operator (earlier classified by him as dregs at the bottom of the barrel) who will be taken off the roads by the passage of Senate Bill 539." He remarked that "no one can continuously operate a motor vehicle and not make some mistake." He indicated the type of driver addressed when he stated, "What we are trying to do with Senate Bill 539 is to get rid of the operator — male or

female — who continues to flaunt his or her disregard for law and for his or her fellow man."

We have no way of knowing what the legislative body believed the bill said as to sequential incidents or convictions. We do believe sequential incidents was the essence of what Mr. Laudan proposed to the Senate Judiciary Committee.

Generally, courts are governed by the sequential relationship principle when applying habitual criminal enactments:

"The majority of the cases in which the courts have construed statutes which, in substance, provide for enhancement of the punishment of one previously convicted, hold that where there were two or more convictions on as many indictments or on two or more counts in the same indictment, only one of them may subsequently be utilized as a previous conviction within the contemplation of habitual criminal statutes." Annot., 24 A.L.R.2d 1247, 1262.

Kansas decisions have conformed to the A.L.R. statement since *State v. Volmer,* 6 Kan. 379 (1870). Rationale and a review of earlier cases are well supplied in *State v. Wilson,* 6 Kan. App. 2d 302, 627 P.2d 1185, *affirmed* 230 Kan. 287, 634 P.2d 1078 (1981), which dealt with our general habitual violator statute, now K.S.A. 1983 Supp. 21-4504. *State v. Osoba,* 234 Kan. 443, 672 P.2d 1098 (1983), applied a sequential relation requirement to our self-contained Habitual DUI statute, K.S.A. 8-1567.

The State now cites certain cases from other states which purportedly would lead to a conclusion in opposition to the reasoning and holding in *Osoba,* but they were discussed and found not persuasive in *Osoba.* Other foreign cases cited by the State, however, make it clear that some states have reached a determination inconsistent with the sequential relation principle in habitual violator acts based — at least in part — on the "single or in combination" language or on language similar and just as unclear. In *Hardison v. Hall,* 162 Ga. App. 342, 291 S.E.2d 416 (1982), the result appears to be based, in part, on the view that the legislature could have clarified the phrase. In *Brewster v. Penn. DOT,* 52 Pa. Commw. 112, 415 A.2d 922 (1980), the identical phrase led to a holding that habitual status was proven when only one driving incident caused multiple convictions. The same result followed in *State v. Thomas,* 275 N.W.2d 422 (Iowa 1979), when reckless driving and driving during license suspension were considered to be two convictions even though they arose from one incident. The phrase was again identical. We recognize the strength of these cases and they make the decision

of the trial court understandable. But they are not necessarily mandates for Kansas.

The State appears to cap its arguments by referring to decisions in Virginia and to the action of the Vermont legislature in clarifying such language in 1982 (Vt. Stat. Ann. tit. 23, §673a [1984 Supp.]), while the Kansas legislature did nothing about the language even though our driver's license suspension law (K.S.A. 8-255) was enacted long before 1972 and would have provided a ready model for clarification as it spoke of "violations committed on separate occasions."

As to the Vermont history, we do not find the reasoning persuasive. That Vermont noticed there was a grammatical problem is no proof that the problem was noticed in the Kansas legislature. Also, it is just as logical to conclude that our legislators would have clarified the language if they disliked the established sequential relation concept of the Kansas courts as to conclude that they would have clarified it if they liked the concept.

Our act appears to have used the Virginia enactment as a model. That statute used the exact phrase and had been in litigation before the enactment of ours. *Estes v. Commonwealth*, 212 Va. 23, 181 S.E.2d 622 (1971). The *Estes* court concluded that two convictions in one case constituted two convictions under their Habitual Offender Act. Adoption of legislation already construed normally carries the construction as well as the language, but we do not find that either mandatory or appropriate. Rather, we think a more sound position is that the statute should be dealt with in the same *manner* as it was dealt with in the state of origin. The conclusion in *Estes* was reached in this manner: Interpret the phrase according to how similar provisions are interpreted in this state as to related statutes.

That method of interpretation sends us, of course, right back to *Wilson* and *Osoba* and Kansas cases cited therein. And that, accordingly, means the sequential relation rule is extended to proceedings under K.S.A. 8-284 *et seq.* Oregon reached a like result under like circumstances. *State v. Zook*, 27 Or. App. 543, 556 P.2d 989 (1976). Their Habitual Traffic Offenders Act had language similar to ours. The Act was interpreted (but at a later time) to be civil in nature: *State v. Rhoades*, 54 Or. App. 254, 634 P.2d 806, *rev. denied* 292 Or. 232 (1981). *Zook* held that se-

quential relationship was applicable because Oregon courts had already held it applied to their general Habitual Criminal Act.

In accordance with what we believe was the intent of our legislature, and following the holdings and reasoning from earlier Kansas cases as to related statutes, we hold that the principle of sequentiality in interpreting enhancement statutes has already been established by *Wilson* and *Osoba.* "[B]y analogy," *Osoba* extended sequentiality under K.S.A. 1983 Supp. 21-4504 to K.S.A. 8-1567(d). 234 Kan. 443. This indicates to us that we also should recognize the use of analogy and thus extend sequential relationship from K.S.A. 8-1567(d) to K.S.A. 8-285(b).

Doing so, however, leaves unanswered a question as to what must be sequential: the violative incidents or the convictions thereon, or both (incident plus conviction, followed by a second incident plus conviction, followed by a third incident plus conviction). The question really comes down to whether the purpose of our statute is distinct from the purpose of the other two statutes.

If there is identical purpose behind all three statutes, it seems clear that each incident and its conviction must follow the earlier incident and its conviction. *Wilson* held it was required "that each succeeding offense he committed after conviction for the preceding offense," 6 Kan. app. 2d 302, Syl. ¶1. *Osoba* adopted identical language. 234 Kan. 443, Syl. ¶1. Each case is concerned with rehabilitation designed to be accomplished as the result of conviction and punishment. Each case makes reference to *State v. Lohrbach,* 217 Kan. 588, 591, 538 P.2d 678 (1975), which reasons:

> "The basic philosophy underlying recidivist statutes might be expressed in this fashion: where the punishment imposed against an offender for violating the law has failed to deter him from further infractions, a harsher and more severe penalty is justified, the idea being, hopefully, that the greater punishment may serve as an object lesson and cause him to accomplish his reformation, where the lesser penalty had failed in that respect."

But is reformation and rehabilitation of individuals the objective sought under our Habitual Traffic Violators Act? We believe not. Its purpose is simple: get the chronic violator out from behind the wheel. By chronic violator we mean one who repeatedly violates the law whether yet convicted of the prior violations or not. That is certainly a fair expression of what Mr. Laudan was seeking when he addressed our Senate Judiciary

Committee. It seems reasonable that is why they responded by recommending Senate Bill 539 for passage.

This construction, moreover, is more consistent with the stated purpose of "provide maximum safety," "deny the [operator] privilege" and "discourage repetition of criminal acts." K.S.A. 8-284.

Although the legislative language is far from clear, we believe that incidents are the key and they must be sequential. We therefore hold that to find a person to be a habitual traffic violator under K.S.A. 8-285(b), the court must find three or more convictions of offenses listed under K.S.A. 8-285(a), each based on a separate incident. Since in this case the two 1983 convictions arose out of one incident, they can only be counted once. Thus, defendant had only two convictions for the purposes of the habitual violators act.

Reversed.

FOTH, C.J., concurring: I agree that under our present statute multiple convictions arising out of one incident should be counted as only one conviction in determining whether a person is a "habitual" traffic violator.

The facts of this case do not require us to decide whether each of the second and third incidents must follow not only the prior offense but conviction for that offense. If called upon to answer this question I would agree with the majority that a person who, for example, drives while under the influence each Saturday night for three successive weeks is a habitual violator, even though not convicted of any of the offenses until after all have occurred. This result would be at odds with that reached under our general habitual criminal act (*State v. Wilson*, 6 Kan. App. 2d 302, 627 P.2d 1185, *aff'd* 230 Kan. 287, 634 P.2d 1078 [1981]) and our DUI habitual violator act (*State v. Osoba*, 234 Kan. 443, 672 P.2d 1098 [1983]). Each of those requires a conviction of the prior offense before the subsequent offense is committed in order for the later offense to be counted as such. Because the Habitual Traffic Violators Act aims not only at rehabilitation but public safety I, like my colleagues, would reach this different result.

As the majority points out, the present act is ambiguous at best. It deserves legislative attention.