(913 P.2d 204)

No. 72,165■

## In re Tax Appeal of TAYLOR CRANE & RIGGING, INC.

Opinion filed September 1, 1995. ■

*Larry E. Gregg*, of Hamilton, Gregg, Barker & Johnson, of Topeka, for appellant.

*Vernon L. Jarboe* and *Ronald H. Grant*, of Kansas Department of Revenue, for appellee.

Before GREEN, P.J., RULON and GERNON, JJ.

GERNON, J.: Taylor Crane & Rigging, Inc., (Taylor) appeals from a final order of the Board of Tax Appeals (BOTA) determining that two forklift trucks and a hydraulic gantry were subject to an assessment of compensating use tax. At issue is whether the equipment used by the taxpayer to load and unload tractor-trailer trucks

traveling from state to state is exempt from taxation as part of the interstate common carrier exemption found in K.S.A. 79-3704.

We affirm.

Pursuant to K.S.A. 74-2426(c), BOTA's decision to deny the exemptions is subject to judicial review under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d 377, 380, 838 P.2d 354 (1992), *rev. denied* 252 Kan. 1092 (1993). The scope of review, set forth in K.S.A. 77-621, states in relevant part:

"(c) The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

. . .

(4) the agency has erroneously interpreted or applied the law;

. . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

As summarized by the court in *In re Tax Appeal of Derby Refining Co.*, 17 Kan. App. 2d at 380-81, a number of general rules apply to appeals of this nature:

"In Kansas, taxation is the rule and exemption is the exception. *Assembly of God v. Sangster*, 178 Kan. 678, 680, 290 P.2d 1057 (1955). The burden of establishing an exemption from taxation is on the party claiming the exemption. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 454, 691 P.2d 1303 (1984). One who claims a tax exemption must bring himself clearly within the exemption provisions of the statute. *Warren v. Fink*, 146 Kan. 716, Syl. ¶ 1, 72 P.2d 968 (1937). Statutory exemption provisions are strictly construed against the party requesting exemption. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 635, 694 P.2d 462 (1985). All doubts concerning exemption are to be resolved against the exemption and in favor of taxation. *Trustees of The United Methodist Church v. Cogswell*, 205 Kan. 847, 851, 473 P.2d 1 (1970)."

This case involves the Kansas Compensating Tax Act, K.S.A. 79-3701 *et seq*. K.S.A. 1994 Supp. 79-3703 provides: "There is hereby levied and there shall be collected from every person in this state

a tax or excise for the privilege of using, storing, or consuming within this state any article of tangible personal property."

K.S.A. 79-3704 states that the provisions of the Act shall not apply:

"(a) In respect to the use, storage or consumption of any article of tangible personal property brought into the state of Kansas by a nonresident who is within the state for not to exceed sixty (60) days for his or her use or enjoyment while within the state; or by a railroad or public utility for consumption or movement in interstate commerce."

Taylor argues that subsection (d) of K.S.A. 79-3704 is also applicable to the present case. Subsection (d) states that the Act shall not apply to property that is not subject to tax under the provisions of the Kansas Retailers' Sales Tax Act. The Retailers' Sales Tax Act exempts from taxation "tangible personal property purchased by a railroad or public utility for consumption or movement directly and immediately in interstate commerce." K.S.A. 1994 Supp. 79-3606(f). Taylor admits that because of the similarity of the statutes, the property in question is either exempt under both or neither.

K.A.R. 92-20-18 amplifies K.S.A. 79-3704 and provides in relevant part:

"Motor carriers authorized by the interstate commerce commission as common carriers and engaged in the transportation of persons or property shall be deemed to be a public utility within the meaning of the term 'public utility' as used in section 79-3704(a) of the act.

. . . .

"All tangible personal property purchased out of the state and brought into the state of Kansas for use, storage, or consumption by common carriers is subject to the tax in the same manner as is tangible personal property brought into the state by other firms, persons, or corporations, except as exempted herein.

"Rolling stock including buses and trailers, purchased by common carriers authorized to engage in interstate transportation by the interstate commerce commission, which tangible personal property is brought into the state of Kansas for movement directly and immediately in interstate commerce, is exempt."

Taylor, as a motor common carrier authorized by the Interstate Commerce Commission, is a "public utility" within the meaning of K.A.R. 92-20-18 and K.S.A. 79-3704(a). Moreover, there is no question that Taylor's two forklifts and hydraulic gantry are items of tangible personal property.

### Are Taylor's forklifts and hydraulic gantry "rolling stock"?

Taylor argues that its forklifts and hydraulic gantry are exempt from taxation pursuant to K.S.A. 79-3704(a). More specifically, Taylor contends that the equipment at issue is "rolling stock" as that term is used in K.A.R. 92-20-18.

The term "rolling stock" is not defined in the statute, the regulation, or Kansas case law. It is most often discussed in the context of railroad equipment, where the term seems to encompass a wide variety of items. 74 C.J.S., Railroads § 1, p. 341, defines rolling stock as "[a] definite and precise term, as to the scope of which there can be no misunderstanding, embracing the movable property belonging to a railroad. The term implies the reverse of annexation and a permanent fixture." Rolling stock is defined in Webster's Third New International Dictionary 1969 (1971) as "the wheeled vehicles (as locomotives, passenger cars, or freight cars) owned and used by a railroad" and as "the wheeled vehicles (as trucks or tractor-trailers) owned and used by a motor carrier."

The comparable provision to K.A.R. 92-20-18 for railroads is K.A.R. 92-20-16, which provides:

"All tangible personal property purchased out of the state and brought into the state of Kansas for use, storage, or consumption by railroads is subject to the tax in the same manner as is tangible personal property brought into the state by other firms, persons, or corporations, except as exempted herein."

The regulation exempts "[r]olling stock, *including locomotives, engines and cars of all kinds* purchased by railroads in another state and brought into Kansas for movement in interstate commerce." (Emphasis added.) K.A.R. 92-20-16.

The policy of the Department of Revenue has been to not exempt forklift trucks, hydraulic gantries, and similar loading and unloading equipment under K.S.A. 79-3704 and K.A.R. 92-20-18. Neither the forklifts nor the hydraulic gantry are licensed as motor vehicles, although they do have wheels and are self-propelled. Neither is intended for highway use. The Department of Revenue views rolling stock as items such as straight trucks and tractor-trailers and argues that forklifts and gantries are no different than

other equipment that is necessary for loading and unloading, such as pallets, ropes, chains, pulleys, and hand trucks.

The interpretation of a statute is a question of law, and it is the function of a court to interpret a statute to give it the effect intended by the legislature. Therefore, while the administrative interpretation of a statute should be given consideration and weight, it does not follow that a court will adhere to an administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts. *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, 647-48, 518 P.2d 453 (1974); see *In re Tax Appeal of McKee*, 19 Kan. App. 2d 43, 48-49, 861 P.2d 1386 (1993).

In 1985, Illinois had a regulation which defined "rolling stock" to include "transportation vehicles" used by a railroad, bus line, airline, or trucking company. The Illinois Court of Appeals considered the "rolling stock" issue in *LeTourneau R.R. Serv. v. Dep't of Rev.*, 134 Ill. App. 3d 638, 481 N.E.2d 864 (1985). At issue was a "LeTro Porter," a rubber-tired, self-propelled machine which is operated from a cab located on the vehicle. It was used primarily to load and unload containerized freight from rail cars, much like a forklift, and could also be used to load and unload semi-trailer trucks. The machine was not affixed to the railroad tracks but operated in the rail yard alongside the tracks. The machine was not equipped for either rail or highway travel and had never left the rail yard after it was delivered in 1979.

In determining whether the machine should be considered rolling stock, the court found that there was no question that the machine aided the movement of goods in interstate commerce. 134 Ill. App. 3d at 642. However, the court denied the exemption, stating as follows:

"The LeTro Porter is not a transportation vehicle such as a railroad car or a semi-truck, for its movement is minimal and is merely incidental to its principal functions of loading and unloading freight. Moreover, it does not transport freight from one geographical location to another, but merely moves the freight within the confines of the rail yard. It is not property which 'in its ordinary use is taken from one part of the line to another' [citation omitted], nor 'goods which are mobile and which are of a type normally used in more than one jurisdiction.' [Citation omitted.] The LeTro Porter is neither a transportation vehicle nor an

instrument intended to be attached to a transportation vehicle." 134 Ill. App. 3d at 642.

The emphasis in K.A.R. 92-20-16 and 92-20-18 is on vehicles that transport persons and property from one state to another in interstate commerce. To include items such as forklifts and hydraulic gantries that load and unload materials onto such vehicles would appear to stretch the intent of these regulations too far. In a sense, forklifts and gantries provide assistance to the vehicles which actually do the transporting of goods; they themselves do not transport goods or persons across state lines. Their movement is incidental to their principal function of loading and unloading goods for transport.

This conclusion is supported by the Kansas Supreme Court's decision in *United Parcel Service, Inc. v. Armold*, 218 Kan. 102, 542 P.2d 694 (1975). In this case, United Parcel Service (UPS) sought a refund for taxes it had paid on several vans and tractor-trailers. UPS argued that the vehicles were exempt as rolling stock used by a public utility for "movement in interstate commerce," pursuant to K.S.A. 79-3704(a). 218 Kan. at 104-06. The Supreme Court agreed, stating as follows:

"We agree with the Department [of Revenue] that 'movement in interstate commerce' requires the property to actually move and does not refer to those items of tangible personal property which are stationary. This interpretation is consistent with the Department's regulations which construe the exemption to apply to rolling stock, and repair and replacement parts which become a part of rolling stock. We have no doubt the legislature had rolling stock in mind when it used the word 'movement' in the exemption provision. However, we cannot concur with the Department's contention that the rolling stock must actually cross state boundary lines to be moving in interstate commerce. The trucks in question were engaged exclusively in interstate commerce although they operated solely within the state." 218 Kan. at 108.

This language suggests that "rolling stock," as that term is used in K.A.R. 92-20-18, is equipment which moves materials in interstate commerce from one destination to another, like a bus or trailer, not just from the ground to a truck bed or vice versa. Taylor incorrectly reads this case to mean that transporting goods from the

ground to a tractor-trailer is equivalent to transporting goods from one destination to another.

Statutory exemption provisions are to be strictly construed against the party requesting the exemption, and all doubts are to be resolved in favor of taxation. We find that BOTA did not err in determining that Taylor's forklifts and hydraulic gantry were not rolling stock pursuant to K.A.R. 92-20-18.

## Is K.A.R. 92-20-18 unduly restrictive of K.S.A. 79-3704?

K.S.A. 79-3704 exempts *"any article of tangible personal property* brought into the state of Kansas by a . . . public utility for consumption or movement in interstate commerce." (Emphasis added.) K.A.R. 92-20-18 exempts "[r]olling stock including buses and trailers, purchased by common carriers authorized to engage in interstate transportation by the interstate commerce commission, which tangible personal property is brought into the state of Kansas for movement directly and immediately in interstate commerce."

Taylor argues that the wording of K.S.A. 79-3704(a) exempting any article of tangible personal property is clear and should be given its ordinary meaning. Had the legislature intended to limit the exemption to just rolling stock, the statute could have been so worded. Taylor contends that K.A.R. 92-20-18 is an attempt to broaden the authority to tax tangible personal property which has previously been declared exempt by the legislature.

K.A.R. 92-20-18 was expressly approved by the Kansas Supreme Court in 1975 in *United Parcel Service, Inc. v. Armold*, 218 Kan. at 108. The court held that the statute and the regulation do not conflict with one another and that the K.A.R. requirement that the equipment be rolling stock to receive the exemption is consistent with the statute and with legislative intent.

Absent some indication that the Supreme Court is departing from its previous position, this court is duty bound to follow the law established by the Supreme Court. *Gruhin v. City of Overland Park*, 17 Kan. App. 2d 388, 391, 836 P.2d 1222 (1992).

## Is K.A.R. 92-20-18 constitutional?

As a final matter, Taylor argues that a tax on machinery that

participates in the loading and unloading of goods shipped in interstate commerce violates the Commerce Clause. Taylor contends that in order to be constitutionally permissible, a compensating use tax must be on property or an event apart from the interstate common carrier service. Taylor maintains that the movement of freight onto and off of trailers is substantially a continuation of the transportation service and, therefore, is part of interstate commerce.

BOTA expressly held that the equipment at issue did not move in interstate commerce. BOTA reasoned that the forklifts and the hydraulic gantry provide services to the trucks which travel across state lines and do not actually "move" things in interstate commerce.

Even assuming that the forklifts and the hydraulic gantry are part of interstate commerce, this does not automatically mean that they are exempt from state taxation. Pursuant to *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977), a state may tax some aspects of interstate commerce if a four-part test is met. This case overruled *Spector Motor Service v. O'Connor*, 340 U.S. 602, 95 L. Ed. 573, 71 S. Ct. 508 (1951), which held that a state tax on "the privilege of doing business" is per se unconstitutional when it is applied to interstate commerce. 430 U.S. at 288-89.

In choosing to focus on economic realities rather than the legal wording of tax statutes, the Court upheld a tax by the State of Mississippi on a motor carrier's transportation of cars manufactured outside the state to Mississippi dealers. 430 U.S. at 276. The Court found that the taxpayer did not allege that its activity which Mississippi taxed did not have a sufficient nexus with the state, that the tax discriminated against interstate commerce, that the tax was unfairly apportioned, or that it was unrelated to services provided by the State. 430 U.S. at 277-78.

In the present case, Taylor's activity has a substantial nexus with Kansas; Taylor is a Kansas corporation with offices in Coffeyville. Taylor has been issued certificates of convenience and necessity by the Kansas Corporation Commission and is licensed as an interstate common carrier by the State. In 1991, approximately 17% of Tay-

lor's gross revenue was derived from intrastate services within Kansas.

Nothing in the record suggests that this tax would unfairly discriminate against interstate commerce. Kansas law provides the same rate of taxation under the Kansas Retailers' Sales Tax Act and the Kansas Compensating Tax Act—4.9%. See K.S.A. 1994 Supp. 79-3603; K.S.A. 1994 Supp. 79-3703. Kansas taxes intrastate and interstate businesses at the same rate.

The fair apportionment prong of the test is satisfied, as the Kansas Compensating Tax Act allows a credit for sales or use taxes paid on the property to other states. K.S.A. 79-3705. Taylor admits that it paid no sales or use tax on the property at issue.

Finally, Taylor derives many aforementioned benefits from the State of Kansas, as well as other services, including use of Kansas roads and other infrastructure systems. The tax imposed on Taylor by Kansas on the equipment at issue is fairly related to the services provided by the State.

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, would, in theory, allow Kansas to tax all of the tangible personal property owned by a motor carrier involved in interstate commerce so long as the four above-described elements were met. However, Kansas chooses to exempt tangible personal property in the nature of rolling stock from any state taxation. Neither K.S.A. 79-3704 nor K.A.R. 92-20-18 is unconstitutional.

Affirmed.